## CIRCUIT COURT OF BATH COUNTY

Earl Marshall

    v.

Michael David McDaniel
(whose correct name is
Howard Michael Daniel)

March 21, 1974

By JUDGE ROSCOE B. STEPHENSON, JR.

    Defendant filed a motion to dismiss this action upon the grounds that, (1) he was not served with process within the period of one year after commencement of the action against him as required by Rule 3:3 of the Rules of the Supreme Court of Virginia, and (2) no valid process has been served on him.

    On October 5, 1969, the plaintiff, Earl Marshall, and the defendant, whose correct name is Howard Michael Daniel, were the drivers of automobiles which collided in Bath County. The accident was investigated by Trooper Tex Chapman of the Virginia State Police. The defendant identified himself to Trooper Chapman as Howard Michael Daniel and also furnished the trooper with his correct address (1021 Park Street, Altavista, Virginia), with his operator's license number and with other information demanded of him. The trooper issued a traffic summons to the defendant, in his correct name, and the defendant paid the required fine that day. At the scene, the trooper directed the parties to exchange names and addresses in writing. There is a conflict in the evidence as to the name which defendant furnished plaintiff.

Defendant testified that he wrote his correct name (Howard Michael Daniel) on a slip of paper, along with his correct address, and handed the slip of paper to plaintiff. Plaintiff testified that the slip of paper which defendant delivered to him contained the name of "David McDaniel." The slip of paper was not produced in Court. A more detailed discussion of this factual issue will follow.

After the accident the defendant returned to his home at 1021 Park Street, Altavista, Virginia, where he had lived his entire life and where he continues to reside. At the time of the accident the defendant resided with his mother, Doris Daniel, and his mother has resided at the above stated address for more than twenty-five years.

Defendant filled out and filed with the Division of Motor Vehicles as required by law an SR-300 Accident Report (Defendant's Exhibit "I") which reflects that defendant reported his correct name and address and other details of the accident.

Following the accident, the plaintiff got in contact with Trooper Chapman, the investigating officer, on two occasions, the first to see if the trooper needed to sign his SR-300 Accident Report, and the second to obtain the name of the owner of the vehicle which the defendant had operated.

The plaintiff learned from Trooper Chapman that the owner of the vehicle was named Doris Daniel and that she was the defendant's mother.

Plaintiff's wife testified that a week or so after the accident she attempted to reach the [defendant] by telephone by calling the telephone number listed in the name of Doris Daniel. She stated that a female voice answered the call and in response to a question, replied that no one lived at that residence named "David McDaniel." Doris Daniel, defendant's mother who is now Doris Yeatts, testified that she did not recall such a conversation and that her telephone number was unlisted at the time.

At the request of his own insurance agent, plaintiff went to that agent's office and signed a "claimant's report of accident" (Defendant's Exhibit "A"). This report showed the name of Howard Michael Daniel and his address

(1021 Park Street, Altavista, Virginia). Although Daniel's name and address is lined through on this form (the reason obviously being that plaintiff's name as claimant was meant for that line of the report), this exhibit shows that plaintiff's agent had the defendant's correct name and address and that plaintiff signed this report.

Plaintiff met with an insurance adjuster working for defendant's insurance company, but he did not inquire from the adjuster about the defendant's correct name.

Several months after the accident (apparently in the early part of 1970), plaintiff employed Erwin S. Solomon, Esquire, as his counsel to represent him respecting his damage claim for personal injuries. Thereafter a series of letters ensued between the insurance company and plaintiff's counsel, beginning December 14, 1970, and ending August 10, 1972. (Exhibits "B"-"F", inclusive). On December 14, 1970, and March 10, 1971, the insurance company wrote to plaintiff's counsel requesting advice concerning counsel's representation of the plaintiff. On March 16, 1971, plaintiff's counsel advised that he did represent the plaintiff and that he had prepared suit and intended to file it that week. By letter dated April 1, 1971, the company acknowledged receipt of the March 16th letter and requested up-to-date medical bills and all medical reports. There was no further correspondence between the two until August 10, 1972, when plaintiff's counsel advised that suit had been filed. Each of these five letters lists the insured as Doris P. *Daniel.*

On March 12, 1971, plaintiff filed suit naming as defendant "Michael David McDaniel" and giving his address as "Altavista, Virginia." Process was sent to the Sheriff of Campbell County, but was returned by the Sheriff on March 15, 1971, with the notation that the defendant was not found within the Sheriff's bailiwick.

Prior to filing suit, plaintiff's counsel, on February 10, 1971, wrote to the Division of Motor Vehicles requesting the investigating officer's report of the accident and enclosing the required fee for same in the amount of $2.00. (Plaintiff's Exhibit "6"). This report was not presented by plaintiff, and the record is silent respecting this report.

By March 23, 1971, plaintiff's counsel was in possession of defendant's correct address and his correct opera-

tor's license number. This is evidenced by a letter from plaintiff's counsel to the Commissioner of Motor Vehicles dated March 23, 1971, (Plaintiff's Exhibit "5"). The record is silent as to how this information was obtained, but it could reasonably be inferred that it came from the accident report requested by plaintiff's counsel on February 10, 1971.

Thereafter, during the latter part of the month of March, 1971, the month of April, 1971, and until May 11, 1971, plaintiff endeavored, without success, to obtain service of process on defendant through the Division of Motor Vehicles. (Plaintiff's Exhibit "4").

The record fails to disclose any activity or any further attempts to obtain service of process by either plaintiff or his counsel from May 11, 1971, to August, 1972.

In early August, 1972, plaintiff's counsel mailed a "motion for judgment" (not a Notice of Motion for Judgment with a copy of the Motion for Judgment attached thereto as provided by Rule 3:3 of the Rules of the Supreme Court) to the Sheriff of Campbell County. On this occasion the defendant's correct street address was furnished, but, again, the Motion for Judgment contained the wrong name for the defendant. On August 7, 1972, (nearly seventeen months after suit was filed), Deputy Sheriff Robert Andrews of Campbell County knocked at the door of the Daniels' home at 1021 Park Street, in Altavista, and asked for a "Michael David McDaniel." When the Deputy was advised that this person did not reside at that address, a discussion followed concerning the contents of the paper which the Deputy sought to serve. Upon learning of its contents, the defendant advised the Deputy that he was the party involved in the accident which was the basis of suit and the Deputy thereupon served the "Motion for Judgment" on the defendant and made a notation as to the defendant's correct name.

There are a number of issues (some of fact, some of law and some of both law and fact) which I am called upon for decision.

I. Did the defendant in fact give to the plaintiff a wrong and fictitious name thereby perpetrating a fraud?

II. If not, did the plaintiff exercise due dili-

gence to have timely service of process on the defendant?

III. Has valid process been served on the defendant at any time?

IV. Did the defendant by filing his response and grounds of Defense on August 21, 1972, waive any right to later invoke the defenses set up in his Motion to Dismiss filed on August 23, 1972?

V. Since plaintiff did not file the "Motion for Judgment" which was served on August 7, 1972, with the Clerk until November 17, 1972, is he estopped by his own conduct to raise the issue of waiver?

## I.

If the defendant did in fact furnish plaintiff with a wrong and fictitious name, then such would have been a willful fraudulent act, and, in my judgment, it would be a miscarriage of justice to permit him to be the beneficiary of his own fraud.

It is important, therefore, carefully to examine all the evidence relative to this issue, bearing in mind that the burden of proving fraud rests on the party alleging it, that fraud must be proved by clear and convincing evidence, and that a presumption exists in favor of honesty and innocence. 10 Va. and W. Va. Digest, *Fraud*, §§ 50, 58; 8 M.J., *Fraud and Deceit*, Secs. 55 to 61, incl.

The plaintiff's only evidence as to fraud is his own testimony. He testified that the slip of paper given him by the defendant at the accident scene contained the name "David McDaniel." (Tr. pp. 15-16). When his discovery deposition was taken, however, he stated that he had given the slip of paper to his attorney and that he did not recall the name that was written on the paper, and that he did not actually look at it. (Dep. pp. 8, 42). In an effort to explain this contradiction, plaintiff testified that he did not look at the paper when he delivered it to his attorney, but that he saw it "later on." (Tr. p. 28). He also testified that the only time he looked at the paper was shortly after the accident and that he did not "pay too much attention to it." (Tr. p. 58). When he was asked when he did pay attention to it, he again contradicted himself by saying, "when I gave

it to Solomon." (Tr. p. 20). Plaintiff's wife testified that she never read the piece of paper. (Tr. p. 48).

The defendant, on the other hand, testified quite positively that he gave plaintiff his correct full name "Howard Michael Daniel." Moreover, at the scene of the accident, he gave his correct name and address to the police officer, who in turn served him with a traffic summons. Plaintiff filed an accident report with the Division of Motor Vehicles in which he gave his correct name and address. To me, it is very significant that when the Deputy Sheriff went to the defendant's·residence, thirty-four months after the accident, to serve a paper on "Michael David McDaniel," the defendant, upon learning of its contents, volunteered that he was the party for whom the paper was intended. This certainly was not conduct consistent with that of one who is alleged to have committed fraud.

I feel compelled to hold that plaintiff has failed to carry the burden of proving fraud, and that the evidence as a whole regarding this inquiry completely exonerates the defendant.

## II.

Rule 3:3(c) of the Rules of the Supreme Court provides in part that:

"No judgment shall be entered against a defendant who was served with process more than one year after the commencement of the action against him unless the Court finds as a fact that the plaintiff exercised due diligence to have timely service on him."

Since the service relied upon occurred nearly seventeen months after suit was commenced, the plaintiff had the burden of proving that he "exercised due diligence to have timely service on" the defendant.

It is important, I think, to examine the evidence for the purpose of determining both what plaintiff *did* do and what he *failed* to do respecting the services of process on defendant.

First to be considered is what plaintiff did do. When suit was commenced (March 12, 1971), process (showing the defendant as "Michael David McDaniel") was directed to the Sheriff of Campbell County for service on a Michael

David McDaniel of Altavista, Virginia. No street address was furnished, and the record is silent as to whether or not plaintiff or his attorney knew the correct street address at that time. This process was returned with the notation that the defendant was not found in the Sheriff's bailiwick.

Somehow (perhaps as a result of receiving the accident report from the Division of Motor Vehicles, but this is only inferred from the evidence), plaintiff's attorney learned of defendant's correct street address and correct operator's license number. (Exhibits "3" and "5"). This occurred on or before March 23, 1971. Instead of attempting to get personal services of process at the newly discovered address, plaintiff and his counsel endeavored to obtain service through the Division of Motor Vehicles. (§§ 8-67.1 and 8-67.2, Code of Virginia, 1950, as amended). By letter dated May 11, 1971, plaintiff's counsel was advised by the Commissioner of the Division of Motor Vehicles that the process was returned "undelivered."

According to the evidence, nothing further was done by plaintiff or his attorney to have process served on the defendant until August, 1972, approximately fifteen months later.

Next to be considered is what plaintiff failed to do.

1. The defendant's correct name was at all times recorded on the accident report filed with the Division of Motor Vehicles, the very report that plaintiff's counsel ordered and paid for by his letter of February 10, 1971. (Exhibit "6"). Plaintiff failed to avail himself of this source of information.

2. The investigating officer (Trooper Chapman), who was readily available to both plaintiff and his counsel at all times, knew defendant's correct name and address. He was never consulted about this by either of them.

3. The County Court of Bath County, as a result of the traffic charge placed against defendant, had defendant's correct name at all times. (Exhibit "G"). Neither plaintiff nor his counsel made inquiry at this source.

4. Both plaintiff and his counsel knew that defendant's mother's name was *Daniel*, but neither apparently considered the possibility that *McDaniel* should have been *Daniel*.

5. Defendant's insurance company, with whom plaintiff's counsel corresponded, could have readily given either plaintiff or his counsel, if requested, the defendant's correct name. No such request was made.

6. Plaintiff's insurance agent had defendant's correct name, and plaintiff, by the exercise of due diligence, could have ascertained the same from that source.

> "Diligence" is the application of a *constant* effort to accomplish an undertaking; it is that *constancy* or *steadiness* of purpose or labor which is usual with men engaged in like enterprises, who desire speedy accomplishment of their designs; it is that assiduity in the prosecution of an enterprise as manifests an intent to complete it within a reasonable time; the doing of an act or series of acts with practical expediency and without delay. *United States* v. *Medway Northern Oil Co.*, (D.C. Cal.) 232 F. 619, 626. 12 Words and Phrases, Per. ed., *Diligence*, p. 427. (Emphasis added.)

The word "diligent" is defined in Black's Law Dictionary, Third Edition, as "attentive and persistent in doing a thing; steadily applied; active; sedulous; laborious; unremitting; untiring."

Our Supreme Court has considered *diligence* in a number of cases involving the granting of a new trial on the grounds of after-discovered evidence. *See Dickens* v. *Goode*, 186 Va. 388, 42 S.E.2d 863 (1947); *Fulcher* v. *Whitlow*, 208 Va. 34, 155 S.E.2d 362 (1967).

In *Fulcher*, the Court held that there had been a failure to exercise due diligence to discover the evidence before the first trial. The plaintiff in that case (the party seeking a new trial), like the plaintiff in the case at bar, had considerable knowledge and facts available to her prior to the first trial, and the Court said:

> With such beforehand knowledge, the plaintiff was under a heavy burden, in supporting her motion for a new trial, to show that her efforts were full and complete in attempting to locate the person to whom the statement had been made. It

was incumbent upon her to explain why it was impossible in the two years between the accident and the first trial to discover that it was Thomas Gravitt to whom the statement had been made when he was located approximately twenty-four hours after she received the unfavorable verdict from the jury.

In determining whether the plaintiff met the burden imposed upon her, we are struck more by what she failed to present in support of her motion for a new trial than what she, in fact, did present.

To me, it is most significant that from May 11, 1971, to August, 1972, (a period of fifteen months) plaintiff and his counsel did nothing, so far as the evidence discloses, in an effort to have process served on the defendant. What was accomplished on August 7, 1972, (service of the Motion for Judgment on the defendant) could just as easily have occurred within the one-year period following the commencement of the suit, if process had been sent to the Sheriff accompanied by the defendant's address. Further, a number of obvious sources were available to plaintiff and his counsel from which the correct name of the defendant could have been obtained. If plaintiff's argument had merit he would have had an indefinite period of time to serve process, notwithstanding the availability of these various sources available to the diligent.

I think the plaintiff has failed to prove "due diligence" as contemplated by the Rule and that the evidence establishes that due diligence was not, in fact, exercised by him.

### III.

What was finally served on the defendant was merely a copy of the "Motion for Judgment." This was not a valid and legal process as required by Rule 3:3. The Rule, of course, requires that a Notice of Motion for Judgment, to which is attached a Motion for Judgment, be issued by the Clerk and served on the defendant. What was actually done in this case (i.e., service of the Motion for Judgment) was a nullity.

## IV.

Plaintiff contends that, by filing a Response and Grounds of Defense prior to filing the Motion to Dismiss, the defendant waived the defenses raised by the Motion to Dismiss. I do not agree.

The defenses raised by defendant's Motion to Dismiss were jurisdictional. Here, no *valid* process was served on the defendant, and as previously stated what was done was a nullity. This being the case, the defendant, or for that matter the Court on its own motion, could, at any time, challenge this invalidity. *Commonwealth* v. *Hall*, 194 Va. 914, 76 S.E.2d 208 (1953); *Cowan* v. *Zimmerman*, 176 Va. 16, 10 S.E.2d 555 (1940); *Pereira* v. *Davis*, 146 Va. 215, 135 S.E. 823 (1926); Code of Virginia, Sec. 8-118; Burks *Pleading and Practice*, 4th ed., Sec. 206, p. 337.

Furthermore, I am of the opinion that, irrespective of what course of action the defendant may take, Rule 3:3 imposes a duty upon the Court, where service of process occurs more than one year after commencement of the suit, to find "as a fact that the plaintiff exercised due diligence to have timely service on" the defendant. The Rule expressly provides that "no judgment shall be entered" until there is such a finding of fact, and such a finding is a condition precedent to a valid judgment. If the defendant had failed to raise the defense, the Court, on its own motion, would have been compelled to raise it by virtue of Rule 3:3.

I further hold, therefore, that there has not been, and could not have been, a waiver respecting the questions pertaining to the services of process and its validity.

## V.

While there well may be merit to the defendant's contention of estoppel as set forth in his Reply Memorandum, in view of the other findings, it is not necessary that I pass on that question.

It is indeed unfortunate that, by sustaining the defendant's Motion to Dismiss, the plaintiff will not have "his day in Court," and Courts are always reluctant to deny to a litigant a trial on the merits of the

case. In this case, however, the plaintiff's failure to comply with the clear mandates of Rule 3:3 leaves me with no choice but to sustain that motion.