## CIRCUIT COURT OF THE CITY OF RICHMOND

Michelle Tindall

v.

Virginia Employment
Commission et al.

October 20, 2004

Case No. CH04-1009-4

BY JUDGE RANDALL G. JOHNSON

Michelle Tindall appeals a decision of the Virginia Employment Commission ("VEC" or "Commission") denying her request for unemployment benefits. The Commission's decision reversed decisions of a claims deputy and an appeals examiner that had awarded benefits. Tindall argues that the Commission's decision should be reversed for two reasons: first, that the employer's appeal from the deputy's determination was untimely; and second, that the Commission's decision on the merits is erroneous. The court concludes that the appeal from the deputy's determination was untimely. No decision is made on the Commission's decision on the merits.

Tindall is a former guidance counselor with Richmond public schools. For some time, she had experienced what the Commission described as "an assortment of problems that included health issues." Record at 30.[1] On September 3, 2002, she went to her primary medical care facility, Patient First,

---

[1] The "Record of Proceedings" from the Commission contains a 33-page record and three appendixes. As used in this opinion, "Record at --" refers to a page in the 33-page record. "App. I (or II or III) at --" refers to a page in an appendix. "App. I (or II or III), Ex. --" refers to an exhibit to an appendix.

a "walk-in" medical treatment facility in Richmond. She was seen by Lisa Krieg, a nurse practitioner. On the same day, citing advice from Krieg, Tindall submitted her resignation.

On September 10, 2002, Tindall submitted to VEC her claim for unemployment benefits. On September 26, the VEC claims deputy interviewed Tindall by telephone. He also conducted a telephone interview with a school representative. On October 25, 2002, he mailed to Tindall and to the school system a "Notice of Deputy's Determination" finding Tindall qualified to receive benefits effective September 8, 2002. Pursuant to Va. Code § 60.2-619(D), the notice informed both parties that the deputy's decision becomes final "unless a notice of appeal is filed within thirty days after it is delivered in person or mailed to the last known address." Record at 8. No appeal was filed within thirty days of October 25.

Shortly after January 14, 2003, Wanda Evans, a Human Resource Associate for the school system, noticed on the school system's quarterly billing statement from VEC that Tindall was receiving unemployment benefits. Record at 30; Appendix III at 5. On January 30, 2003, Evans wrote the following letter to the Commission:

> Upon receipt of the quarterly billing statement and after researching our files, I am unable to determine that a qualification for unemployment benefits was ever issued for the above-referenced person. If a qualification was not [*sic*] issued, we wish to file an appeal. We do not believe that she is eligible for unemployment benefits when she resigned of her own accord.[2]

App. III, Ex. 2.

Evans received no response to her letter until March 4, 2003, when VEC sent her a copy of the deputy's determination. On March 28, 2003, Evans sent to VEC the following letter:

> This letter serves to certify that we never received a deputy's determination that qualified Ms. Satterfield [Tindall's former name] for unemployment benefits. Respectfully, we request that this matter be reopened to allow us an opportunity to discuss Ms. Satterfield's separation. We wish to appeal the decision that was rendered.

Record at 11.

---

[2] The statement "If a qualification was not issued" obviously should have been "If a qualification was issued."

A hearing before an appeals examiner took place on June 23, 2003, at which the parties presented evidence and argument on both the timeliness question and the merits of Tindall's entitlement to benefits. On June 25, 2003, the appeals examiner mailed his decision finding that the appeal was timely, but also finding that Tindall was entitled to benefits. Upon the school system's timely appeal of that decision, the Commission affirmed the decision that the appeal from the deputy's determination was timely, but reversed the decision that Tindall was entitled to benefits. Tindall's appeal to this court followed.

In finding that the school system's appeal from the deputy's determination was timely, the appeals examiner stated:

The uncontested testimony of the employer representative is that he [*sic*] did not receive the Deputy's determination mailed October 25, 2002. The Appeals Examiner has no reason to doubt the credibility of the testimony given, and as such finds that the employer's appeal was timely under the circumstances.

Record at 20.

No other reason for accepting the appeal was given. In its consideration of the timeliness question, the Commission pointed out that Va. Code § 60.2-619(D) provides that the time for appeal may be extended "for good cause shown." Citing the case of *Pickard v. Virginia Empl. Comm'n*, (Arlington County Circuit Court, Law No. 24903, decided December 28, 1984), the Commission opined that "to establish good cause to extend the appeal period, the appellant must show that uncontrollable, necessitous, and compelling circumstances prevented filing an appeal within the enunciated statutory time limit." Record at 31. Finding that the school system "was unaware of the adverse determination until the reimbursable billing notice arrived in January 2003," *id.*, the Commission held:

Inasmuch as a prompt inquiry was made thereafter in January, that inquiry itself, which questioned why benefits had been paid to the claimant even before a copy of the determination was received, is sufficient to constitute an appeal for which an extension of the appeal period was justified.

*Id.*

The record does not support the Commission's conclusion.

As already noted, Wanda Evans learned around the middle of January that Tindall was receiving unemployment benefits. Pursuant to Va. Code

§ 60.2-619(A)(1), the only way a person can receive benefits is through a decision of a claims deputy, an appeals examiner, or the Commission. In fact, counsel for the school system conceded at oral argument in this court that a person can receive benefits only after such a decision. Evans also testified that she had been employed by Human Resources since 1987 (App. I at 4) and had been handling VEC matters "for many years now . . . I'm aware of the [inaudible] and what to do in order to get an . . . appeal filed." Id. at 7. In light of that knowledge, Evans' conduct in noting an appeal leaves much to be desired.

Evans' office is in City Hall, which is located at 301 North Ninth Street. The administrative office of VEC is located at 703 East Main Street, five blocks away. At oral argument, counsel for VEC stated in answer to the court's question that had someone from the school system physically gone to VEC, a copy of the deputy's determination would have been provided "on the spot." The court is confident that a telephone call would have accomplished the same thing. Evans also testified that around the time of the deputy's determination, the school system was having considerable trouble receiving mail. Specifically, she testified:

> [D]uring that period . . . there were quite a few decisions that did not reach us. . . . [T]his was not the only case where I did not receive a decision. I had about three or four of them that came in . . . that I did not receive and I got hearings scheduled all around the same time when the decisions didn't reach me. It was not until I received a quarterly billing that . . . I was able to see that . . . money was being paid to different claimants.

App. II at 15-16.

In spite of that, and in spite of Evans' knowledge of Tindall's receipt of benefits and of "what to do in order to get an . . . appeal filed," Evans was content to write a letter at least fourteen days later informing VEC that she was "unable to determine that a qualification for unemployment benefits was ever issued." She then waited at least thirty-four more days, without conducting any follow-up or other inquiry, before receiving a letter from VEC dated March 4, 2003, enclosing the deputy's determination. Even then, she did not send a letter actually noting an appeal until March 24, 2003, another three weeks later. In other words, based on Evans' testimony and counsel's concession, and assuming that the "middle of January" in the record refers to January 16, and in spite of Evans' testimony that she had been in her job since 1987 and knew "what to do in order to get an . . . appeal filed," Evans did not

formally note an appeal of the deputy's determination until seventy-one days, or more than two complete appeal periods, after she *knew* that the deputy had ruled in favor of Tindall. Those facts do not constitute good cause to grant an extension.

The court does not disagree with the Commission's statement that, in order for good cause to exist, an appellant must show that "uncontrollable, necessitous, and compelling circumstances prevented filing an appeal within the enunciated statutory time limit." The court is of the opinion, however, that such showing only partially satisfies the good cause requirement. If all that is required is that an appellant show that the appeals deadline had already been missed due to uncontrollable, necessitous, and compelling circumstances, there would be nothing to ensure that the appellant acts diligently to go forward with the appeal after those circumstances are removed. Surely, an appellant, who for good cause has missed an appeals deadline, cannot wait an inordinate amount of time after realizing the deadline was missed before doing something to protect its interests. Otherwise, there would be no time limit at all, and the appellant could simply wait until it is ready to note the appeal, no matter how much time goes by before it does. That cannot be the law.

The court has been cited to no case directly on point other than *Pickard v. Virginia Empl. Comm'n*, already mentioned. The court has also been unable to find one. The court firmly believes, however, and now holds, that in order to show good cause for an extension of time to note an appeal under Va. Code § 60.2-619(D), an appellant must show not only that uncontrollable, necessitous, and compelling circumstances prevented filing an appeal within the enunciated statutory time limit, as was the holding in *Pickard*, but also that the appellant acted with diligence in noting the appeal under whatever circumstances existed. The school system did not act with such diligence here.

Diligence has been defined in various ways by Virginia's courts. Those definitions are fully consistent with the court's holding in this case. For example, in *STB Marketing Corp. v. Zolfaghari*, 240 Va. 140, 393 S.E.2d 394 (1990), which involved due diligence in discovering fraud for statute of limitations purposes, the Supreme Court said:

> The language "by the exercise of due diligence reasonably should have been discovered," as used in Code § 8.01-249, means "[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man [or woman] under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case."

240 Va. at 145 (*quoting Black's Law Dictionary* 411 (rev. 5th ed. 1979)).

In *Dennis v. Jones,* 240 Va. 12, 393 S.E.2d 390 (1990), involving the diligence requirement for orders of publication under Va. Code § 8.01-316(1)(b), the Court said:

> The noun "diligence" means "devoted and painstaking application to accomplish an undertaking."

240 Va. at 19 (quoting *Webster's Third New International Dictionary* 633 (1981)).

And in *Marshall v. McDaniel,* 9 Va. Cir. 369 (1974), former Justice Stephenson, while a judge of the Circuit Court of Bath County, said the following with regard to the due diligence requirement of Supreme Court Rule 3:3, generally mandating service of process within one year of filing suit:

> "Diligence" is the application of a *constant* effort to accomplish an undertaking; it is that *constancy* or *steadiness* of purpose or labor which is usual with men [or women] engaged in like enterprises, who desire speedy accomplishment of their designs; it is that assiduity in the prosecution of an enterprise as manifests an intent to complete it within a reasonable time; the doing of an act or series of acts with practical expediency and without delay.

9 Va. Cir. at 376 (*quoting United States v. Medway Northern Oil Co.,* 232 F. 619, 626 (S.D. Cal. 1916) (emphasis in *Marshall*)).

Evans' filing of an appeal seventy-one days after she knew that a deputy had ruled in Tindall's favor meets none of the definitions of diligence just cited.

The court also rejects the Commission's finding, and respondents' argument, that Evans' "inquiry itself, which questioned why benefits had been paid to the claimant even before a copy of the determination was received, is sufficient to constitute an appeal for which an extension of the appeal period was justified." Record at 31. The notice contained in the deputy's determination informed the parties:

> This determination becomes final unless notice of appeal is filed within thirty days after it is delivered in person or mailed to the last known address. The appeal must be in writing and should set forth the grounds upon which the appeal is sought. The appeal should be

131

filed (1) in person at the field office where the claim was filed; (2) by mail to the central office of the Virginia Employment Commission, ATTN: First Level Appeals, Room 124, P. O. Box 1358, Richmond, Virginia 23218-1358; or by facsimile (fax) transmission to the first level appeals unit at (804) 786-8492.

Record at 8.

Although Evans' January 30 letter contained the statement "If qualification was not [sic] issued, we wish to appeal," *see* n. 2 *supra*, it was not delivered in person or by facsimile, nor mailed to the attention of "First Level Appeals, Room 124." It was simply mailed to the Commission and addressed "Dear Sir or Madam." App. III, Ex. 2. In fact, in the Commission's response to that letter, which enclosed a copy of the deputy's determination, the Commission's representative said, "Our records indicate that you did not file an appeal." App. III, Ex. 3. The court agrees with the Commission's representative.