# STB MARKETING CORPORATION

## V.

# NASSER ZOLFAGHARI

Record No. 891212

June 8, 1990

Present: All the Justices

*Herbert L. Karp (Brown and Karp*, on briefs), for appellant.
*Jerome P. Friedlander, II (Benjamin A. Klopman; Friedlander
& Friedlander; Cramer & Klopman*, on brief), for appellee. ·

JUSTICE HASSELL delivered the opinion of the Court.

The primary issue that we consider in this appeal is whether the trial court erred when it sustained the defendant's plea of the statute of limitations in an action for fraud.

STB Marketing Corporation (STB) was awarded a judgment against Leon and Louise Petrossian in the amount of $28,258.45 plus interest and costs on January 19, 1979. On January 18, 1979, one day before STB's judgment against the Petrossians was entered, a second deed of trust conveying a parcel of land owned by the Petrossians was recorded among the land records in Fairfax County. This deed of trust secured a promissory note for $55,000 payable to Sasan Jack Shahriari and Friedoun Shirinzadeh.

In September 1979, STB filed a bill of complaint in the Circuit Court of Fairfax County requesting a determination of priority of

liens filed against the property. STB also asked that the court order a sale of the Petrossians' property in order to satisfy its judgment. The suit was referred to a commissioner in chancery. On May 9, 1980, the commissioner filed his report, which found that a deed of trust in favor of the United Savings and Loan Association was a valid first lien, that the Shahriari and Shirinzadeh deed of trust was a valid second lien, and that STB's judgment was a valid judgment of record, but that it was a lien subordinate to both deeds of trust. STB filed exceptions to the commissioner's report. The court confirmed the commissioner's report on August 15, 1980. That judgment was not appealed.

Nasser Zolfaghari (Zolfaghari) purchased the note secured by the first deed of trust from United Savings and Loan Association after the commissioner's report had been filed, but before the court confirmed the report. Zolfaghari then arranged for the transfer of the lien of the second deed of trust from Shahriari and Shirinzadeh to his brother, Ali Zolfaghari. Unbeknownst to STB, the note secured by the second deed of trust had been paid and fully satisfied when it was transferred to Ali Zolfaghari. The deed of trust, however, had not been marked satisfied. Nasser Zolfaghari and his brother allowed the second deed of trust to remain recorded as unsatisfied.

Zolfaghari foreclosed on the first deed of trust. He acquired the Petrossians' parcel of land at the foreclosure sale for $68,000 on July 23, 1982. Zolfaghari represented to the commissioner of accounts that proceeds from the foreclosure sale were used to satisfy the unpaid balance of the first deed of trust debt of $19,125 and partially satisfy the second deed of trust debt even though that debt had been previously paid in full. Ali Zolfaghari did not receive any proceeds from the foreclosure sale. But for the fraudulent acts, the foreclosure sale proceeds which remained after the valid first deed of trust debt had been satisfied would have been used to pay STB's judgment.

Michael Bakhtiar, sole stockholder and president of STB, testified during the trial of this action that he was unaware of the Zolfagharis' fraudulent acts. Even though STB had a board of directors, Bakhtiar was the only person who acted on behalf of STB. STB had counsel which represented it during the litigation to determine lien priorities. Bakhtiar was convicted of drug-related offenses and was incarcerated from February, 1980 to February, 1985. Bakhtiar did not engage in any business activities on

behalf of STB while he was incarcerated because he was informed by prison authorities that to do so would jeopardize his chances for parole.

When Bakhtiar was released from prison in February, 1985, he returned home and obtained gainful employment. In 1986, he tried to locate the attorney who had represented STB in the 1979 litigation against the Petrossians. When Bakhtiar learned that his former attorney had died, he obtained STB's file from the deceased attorney's law firm. He consulted a lawyer in Maryland who referred him to Virginia counsel. In July, 1986, Bakhtiar's Virginia counsel compelled the Petrossians to appear before a commissioner to answer questions under oath about their assets which might be available to satisfy STB's judgment. Bakhtiar received information during this proceeding which caused him to file this action of fraud on January 16, 1987, in which STB sought to recover compensatory and punitive damages from Zolfaghari.

The trial court, sitting without a jury, considered the evidence and found that Zolfaghari had committed fraud because the second deed of trust had been satisfied before the foreclosure sale of the Petrossians' property and should have been marked satisfied; Ali Zolfaghari signed an acknowledgment of receipt of funds which he gave to the commissioner of accounts stating that $42,740.28 of the foreclosure proceeds was paid to satisfy a part of the second deed of trust debt, when in fact it was never paid; and "there was a deliberate attempt to make sure that Petrossian and the [Zolfaghari] family were covered to the detriment of STB Corporation."

The trial court, however, granted Zolfaghari's motion to strike STB's evidence and sustained his plea of the statute of limitations because the certificate of transfer of the deed of trust from Shahriari and Shirinzadeh to Ali Zolfaghari, which was recorded in the Clerk's Office of Fairfax County, indicated that Ali Zolfaghari acquired the second deed of trust on June 19, 1980, and even though this did not constitute actual notice to STB or Bakhtiar, it was notice of record. Furthermore, the trial court recognized that STB was represented by counsel when the June, 1980 certificate of transfer was recorded and that Bakhtiar's credibility was questionable because he stated in an answer to an interrogatory that he learned of the foreclosure sale in 1985, but at trial he denied having any such knowledge until 1986. The trial judge stated, "when I put all those [facts] together, it's my judg-

ment that due diligence was not exercised, discovery [of the fraudulent acts] could have taken place at an earlier time."

■ We disagree with the trial court. Code § 8.01-249 provides that a cause of action shall be deemed to accrue "[i]n actions for fraud . . . when such fraud . . . is discovered or by the exercise of due diligence reasonably should have been discovered." Section 8.01-248 of the Code provides: "[e]very personal action, for which no limitation is otherwise prescribed, shall be brought within one year after the right to bring such action has accrued."[1]

■ STB's cause of action did not accrue until it knew or reasonably should have known of the fraud. Had Bakhtiar or STB's attorneys examined the land records and foreclosure sale documents in the Clerk's Office of Fairfax County at any time, they would not have learned of any fraudulent acts. They would have found the certificate of transfer of the first deed of trust from United Savings and Loan Association to Zolfaghari, the certificate of transfer of the second deed of trust from Shahriari and Shirinzadeh to Ali Zolfaghari, the account of sale under the deed of trust, the acknowledgment of receipt of funds and the final accounting, all seemingly proper. An examination of these documents would lead a reasonably prudent person to conclude that the first deed of trust was paid in full and the second deed of trust partially satisfied by proceeds from the foreclosure sale. Recordation of the fraudulent documents in and of itself is not sufficient to impute notice of the fraud to STB.

■ The language "by the exercise of due diligence reasonably should have been discovered," as used in Code § 8.01-249, means "[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case." *Black's Law Dictionary* 411 (rev. 5th ed. 1979). Cf. *Dennis v. Jones*, 240 Va. 12, 19, 393 S.E.2d 390, 393 (1990) (decided today) ("diligence," as used in Code § 8.01-316(1)(b) setting forth requirements for order of publication, de-

---

[1] Code § 8.01-243(A) was amended, effective July 1, 1987. The present statute provides: "Unless otherwise provided in this section or by other statute, every action for personal injuries, whatever the theory of recovery, and every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." This two-year statute of limitations does not apply to STB's cause of action because it accrued before July 1, 1987.

fined). Whether such due diligence has been exercised must be ascertained by an examination of the facts and circumstances unique to each case. *See Mears* v. *Accomac Banking Co.,* 160 Va. 311, 168 S.E. 740 (1933) (in action for fraud where seller of bonds regularly paid interest to purchaser for almost six years and purchaser had no reason to suspect that bonds were worthless, purchaser's claim was not barred by statute of limitations because of his lack of due diligence to discover seller's fraud).

STB did not have any reason to believe that the conveyance of the second deed of trust and the distribution of the foreclosure proceeds were fraudulent until it discovered additional information in July, 1986 when it interrogated Mr. Petrossian. Nasser and Ali Zolfaghari's conduct concealed the true nature of their fraudulent acts. The trial court observed, "I believe that Nasser Zolfaghari concocted this plan. It's a very clever plan. I admire his brilliance. And I find that he is a very brilliant and a highly intelligent man."

We hold that under the facts and circumstances of this case, STB exercised due diligence and that its cause of action for fraud did not accrue until July, 1986. The judgment of the trial court will be reversed and this case will be remanded for the entry of an order that awards damages to STB in accordance with the trial court's alternative findings.[2]

*Reversed and remanded.*

---

[2] The trial court made alternative findings, but did not include them in the final order. The trial judge stated, "[I]f I were going to award judgments in this case in favor of the plaintiff, I would award the figure of . . . $28,258.45, with interest at the rate of 8 percent from July 19, 1974, plus attorney's fees of $4,000 . . . . I would double . . . [that amount] for [an award of] punitive damages."