# CIRCUIT COURT OF THE CITY OF NORFOLK

In re Estate of
Russell Olker

September 12, 2000

Case No. (Chancery) CH99-1245

BY JUDGE MARC JACOBSON

Kathleen Thompson filed on August 23, 1999, a Petition to Admit Lost Will to Probate, seeking to admit a copy of the purported will of Russell Olker (Olker) to probate and seeking administrators to be appointed for the estate of Olker, deceased.

Olker died in the City of Norfolk, Virginia, on December 28, 1998, and in the Petition, Thompson alleges that Olker left a will which he executed on June 18, 1996. (Pls. Pet. ¶ 2.) Thompson alleges that she is unable to locate the original will following a "careful search" (Pls. Pet. ¶ 2) and now seeks to admit a copy of Olker's will to probate.

In the Petition, Thompson asserts that at the time of his death, Olker was not married and did not have any children. (Pl's Pet. ¶ 4.) She includes a list of twenty heirs, which allegedly catalogue Olker's brothers, sisters, nieces, and nephews. Upon receiving notice of the Petition to probate the will, Olker's brothers, Robert Olker (Robert) and Frederick Olker (Frederick) wrote this Court to explain their concern with the will and highlight the fact that Olker had two children at the time of death, namely Michael Olker and Ann Gae. (Letter from Frederick to Albert Teich, Jr., Clerk of the Circuit Court of the City of Norfolk, dated 7/6/99, and letter from Robert to Teich dated 8/1/99.) Furthermore, Frederick's letter suggested that the will was potentially the product of coercion. (Letter from Frederick to Teich dated 7/6/99.) Frederick in his letter alleges Olker had over twenty-three nieces and nephews and suffered from strokes prior to his death. Frederick claims that it was unlike Olker to leave the residue of his estate to only one of his nieces. (Letter from Frederick to Teich dated 7/6/99.)

On March 22, 2000, Thompson applied for an order of publication to notify Michael Olker and Ann Gae of the Petition to probate Olker's will. Thompson submitted an affidavit asserting that she used due diligence to locate Michael Olker and Ann Gae but was unable to secure an address. (Thompson Affidavit.) As a result, on April 25, 2000, this Court granted Thompson's application for an order of publication and Thompson published an advertisement in *Dolan's Virginia Business Observer* for four consecutive weeks.

Virginia Code § 8.01-316 provides, in pertinent part, that an order of publication may be entered against a defendant if "diligence has been used without effect to ascertain the location of the party to be served." Va. Code Ann. § 8.01-316 (Michie 1950). Case law interpreting this section of the Code states that "the order of publication and the statute authorizing it both must be strictly construed" because the notice is constructive only. *Dennis v. Jones*, 240 Va. 12, 18, 393 S.E.2d 390 (1990) (quoting *Forrer v. Brown*, 221 Va. 1098, 1105, 277 S.E.2d 483, 486 (1981)). Furthermore, courts emphasize that the facts that the party seeking service states in the affidavit must be true, and not "merely idle declarations having no factual basis." *Dennis*, 240 Va. 12, 18, 393 S.E.2d 390 (1990).

Virginia courts look to the plain English meaning of the noun "diligence" in defining the phrase "due diligence." For example, the Supreme Court of Virginia referenced *Webster's Third New International Dictionary* in defining "diligence." *Id*. at 19. In *Dennis*, the Supreme Court of Virginia defined "diligence" as "devoted and painstaking application to accomplish an undertaking."[1] *Id*. The Court further noted that the determination of diligence is necessarily factual and must be assessed according to the circumstances in each case. *Id*. Finally, the Court held that mere "informal contacts" do not satisfy the standard "devoted and painstaking" efforts. *Id*.

---

[1] It should be noted that on the same day that the Supreme Court of Virginia decided *Dennis*, it also decided *STB Marketing Corp. v. Zolfaghari*, 240 Va. 140, 144, 393 S.E.2d 394 (1990), in which it defined "due diligence" as it pertains to the statute of limitations in an action for fraud. In *STB Marketing*, the Court looked to the Black's Law Dictionary 411 (rev. 5th ed. 1979) and defined "due diligence" as [s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by an absolute standard, but depending on the relative facts of the special case." 240 Va. 140, 144, 393 S.E.2d 394. The Court noted that it simultaneously decided *Dennis* defining "due diligence" differently for orders of publication.

Virginia courts require "devoted and painstaking" efforts to satisfy the requirements of "due diligence" with reference to orders of publication. This standard is particularly applicable in the instant cause where Thompson seeks to admit to probate a copy of a will purportedly lost.

Accordingly, the Court finds and concludes that the "devoted and painstaking" efforts which would be required to satisfy the "due diligence" standard for an order of publication, particularly in the instant cause, has not been satisfied and counsel should take such action as may be necessary or required to satisfy the "due diligence" standard.