# CIRCUIT COURT OF FAIRFAX COUNTY

Bear Ridge Developers, L.L.C.

v.

Joseph D. Cooper, Jr.

v.

Wachovia Bank, N.A.

December 2, 2008

Case No. (Law) 2008-8848

BY JUDGE R. TERRENCE NEY

This matter came before the Court on October 17, 2008, upon the Motion of Third-Party Defendant Wachovia Bank, N.A.'s Special Plea in Bar to the Third-Party Complaint of Joseph D. Cooper, Jr. After argument, the Court took the matter under advisement.

*Facts*

This lawsuit centers around a commercial condominium, The Marbrook Centre ("Marbrook") located in Chantilly, Virginia. A Deed of Declaration ("Declaration") dated September 24, 1987, by Markey Associates ("Markey"), a Virginia general partnership, established Marbrook and was recorded in the land records of Fairfax County, Virginia. Ameribanc Savings Bank, FSB ("Ameribanc") succeeded to Markey's interest in Marbrook pursuant to foreclosure proceedings in June 1991.

The Marbrook Declaration contained a plot of convertible land ("Convertible Land # 4") measuring 6,383 square feet. A Third Deed of Correction and Fifth Amendment to the Declaration were recorded which re-designated Convertible Land # 4 to Convertible Space # 4 with a square footage of approximately 6,383 feet. Subsequently, a Sixth Amendment to the Declaration ("Sixth Amendment") was recorded which converted Convertible Space # 4 into two separate units ("Unit 4A" and "Unit 4B"). Pursuant to the Sixth Amendment, Unit 4A consists of 2,886 square feet and Unit 4B consists of 3,557 square feet.

Thereafter, a demising wall was erected to separate the two units.

Unit 4B was purchased by Plaintiff/Counter-Defendant Bear Ridge Developers, L.L.C.'s ("Bear Ridge") predecessor-in-interest in October 1993. In September 1996, Unit 4A was sold to Cooper from First Union National Bank of Virginia ("First Union"), successor by merger to Ameribanc. First Union delivered to Cooper a Sales Agreement and a Special Warranty Deed. The Sales Agreement showed 3,753 square feet for Unit 4A. At the time of his purchase, Cooper measured the space, which was within twenty square feet of the footage set forth in the Sales Agreement. The deed did not contain the square footage of the property, but it did make reference to the recorded documents found in the land records.

In the spring of 2008, Bear Ridge learned that the demising wall had been improperly placed, depriving it of approximately 875 square feet of space less than that described in the recorded Sixth Amendment.

On July 8, 2008, Bear Ridge filed its Complaint against Cooper. Cooper filed a Third-Party Complaint against Wachovia, alleging that his Sales Agreement for the purchase of Unit 4A contained the square footage measurements on which he relied and on which he based his purchase.

*Analysis*

Cooper asserts claims against Wachovia of Intentional Misrepresentation (Count I), Constructive Fraud (Count II), Breach of Warranty of Title (Count III), Reformation of Documents; Intentional Fraud (Count IV), Reformation of Documents; Constructive Fraud (Count V), Reformation of Documents; Mutual Mistake (Count VI), and Breach of Contract (Count VII). See Defendant's Third-Party Complaint.

*Counts I: Intentional Misrepresentation*
*and Count II: Constructive Fraud*

Under Virginia Law, actions for fraud are governed by a two-year statute of limitations. "[E]very action for personal injuries, whatever the theory of recovery, and every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." Va. Code § 8.01-243(A). An action shall be deemed to accrue "for fraud or mistake . . . when such fraud, mistake, misrepresentation, deception, or undue influence is discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code § 8.01-249(1). Due diligence may be defined as "[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances, not measured by any absolute standard, but depending on the relative facts of the special case." *STB Marketing Corp. v. Zolfaghari*, 240 Va. 140, 144, 393 S.E.2d 394, 397 (1990) (citing *Black's Law Dictionary* 411 (rev. 5th ed. 1979))'.

The question of whether these claims are barred by the statute of limitations hinges on whether a reasonable person in Cooper's position would have investigated the clear reference to land records set forth in the Special Warranty Deed conveying Unit 4A. The Virginia Supreme Court addressed that issue in *STB Marketing Corp. v. Zolfaghari*, 240 Va. 140, 393 S.E.2d 394 (1990). Although the facts of *STB Marketing* differ from those here, the legal principle remains the same.

In *STB Marketing*, the Court held that a *hypothetical* thorough examination of land records would not have apprised the plaintiff of the fraudulent acts at issue. *STB Marketing* involved a dispute regarding the priority of liens filed against certain property. The trial court found that an exercise of due diligence would have revealed fraudulent acts with respect to the priority and satisfaction of the liens at issue and sustained a plea of the statute of limitations in favor of the defendant. The Virginia Supreme Court reversed, ruling that an examination of land records and foreclosure sale documents would not have revealed anything other than seemingly proper documentation. *Id.* This analysis suggests that a reasonable person *would* investigate land records. *Id.* at 144. Here, such an investigation by Cooper at the time of the purchase would have revealed the discrepancy in the square footage measurements of Unit 4A.

As earlier noted by the Virginia Supreme Court:

> Purchasers are bound to use a due degree of caution in making their purchases, or they will not be entitled to protection. Caveat emptor is one of the best settled maxims of the law, and applies exclusively to a purchaser. He must take care, and make due enquiries [sic], or he may not be a bona fide purchaser. He is bound, not only by actual, but also by constructive notice, which is the same in its effect as actual notice. He must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, or to the knowledge of which anything there appearing will conduct him. He has no right to shut his eyes or his ears to the inlet of information, and then say he is a bona fide purchaser without notice.

*Burwell's Adm'rs v. Fauber*, 62 Va. (21 Gratt.) 446, 463 (1871).

If Cooper had inspected the Fairfax County Land Records at the time of his purchase of Unit 4A, he would have seen that the condominium instruments and the Sales Agreement were not in agreement with respect to the size of the Unit. Thus, Cooper's intentional misrepresentation and fraud claims accrued on or about September 26, 1996, and are, therefore, barred by the statute of limitations.

### Count III: Breach of Warranty of Title

A special warranty "shall have the same effect as if the grantor has covenanted that he, his heirs, and personal representatives will forever warrant and defend such property unto the grantee, his heirs, personal representatives, and assigns against the claims and demands of the grantor and all persons claiming or to claim by, through, or under him." Va. Code § 55-69.

Under this theory of recovery, a two-year statute of limitations is also applicable. Va. Code § 8.01-243(A). No Virginia precedent addresses when the statute of limitations begins to run on a claim for breach of warranty of title, and, furthermore, whether constructive notice is applicable to its instigation. *Davis v. Tazewell Place Assocs.*, 254 Va. 257, 492 S.E.2d 162 (1997). While not directly on point, *Davis* suggests that the cause of action does not accrue until the covenantee has actual notice of the defect. *Davis* involved a dispute between homeowners and the developer from whom they purchased their townhouse. The contract for the purchase and construction included an express warranty that the developer would construct the

townhouse "in a good and workmanlike manner in substantial accordance with the plans and specifications." The purchasers noticed substantial defects several months after closing and so notified the developer. The developer did not remedy the defects. The trial court granted the developer summary judgment based on the statute of limitations running from the time of closing to the institution of the suit. The Virginia Supreme Court reversed, holding that the statute began to run when the purchasers notified the developer of its breach of warranty. *Id.* at 261. Additionally, the language of the special warranty statute suggests that discovery of this breach would not arise by constructive notice, but upon a challenge to ownership.

The square footage discrepancy of Unit 4A may have affected Cooper's contractual expectations, but it was not until Bear Ridge sued Cooper that his title was placed in jeopardy. That is when the statute of limitations began to run. *Brunswick Land Corp. v. Perkinson*, 153 Va. 603, 608, 151 S.E. 138, 140 (1930) ("It is well settled and needs no citation to that effect, that the statute [of limitations] begins to run when the right of action accrues."). Therefore, this cause of action accrued in 2008 at the instigation of Bear Ridge's lawsuit against Cooper's title to Unit 4A. As a result, Cooper may properly proceed under this claim.

*Count IV: Reformation of Documents; Intentional Fraud,*
*Count V: Reformation of Documents; Constructive Fraud,*
*and Count VI: Reformation of Documents; Mutual Mistake*

This Court is of the opinion that Reformation of Documents is a remedy that is not appropriate in this particular situation, not because of the nature of its application, but because of its effect. *Larchmont Properties v. Cooperman*, 195 Va. 784, 791, 80 S.E.2d 733, 737-38 (1954) ("Equity has jurisdiction to reform written instruments in but two well-defined cases: 1. Where there is a mutual mistake, that is, where there has been a meeting of minds, an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto; and 2. Where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the remaining parties. In such cases the instrument may be made to conform to the agreement of transaction entered into according to the intention of the parties."). While reformation of the relevant condominium instruments (Third-Party Complaint, 8-11) would certainly benefit Cooper, it would reduce the ownership interest of Bear Ridge, which is innocent as to Cooper. Such a remedy should not be permitted.

*Count VII: Breach of Contract*

Mr. Cooper's breach of contract claim is barred by the statute of limitations. Under Virginia law, a claim for breach of a written contract is governed by a five-year statute of limitations. Va. Code § 8.01-246(2). A cause of action for breach of contract accrues on the date of the purported breach and not upon the discovery of the breach or resulting damages. Va. Code § 8.01-230. *If* any breach of contract occurred, it occurred when Cooper and First Union signed the Sales Agreement in 1996. Mr. Cooper asserts in his Third-Party Complaint that "[t]he Sales Agreement was breached by Wachovia . . . as of the effective date of the Sales Agreement. . . ." Third-Party Complaint, 11.

The Special Plea in Bar to the Third-Party Complaint is granted as to Counts I, II, IV, V, VI, and VII, and denied as to Count III. Mr. Cooper may proceed under his claim of Breach of Warranty of Title only.