# CIRCUIT COURT OF THE CITY OF RICHMOND

Jacob A. Schur

v.

Mark D. Sprenkle

Case No. CL10-4495

BY JUDGE MELVIN R. HUGHES, JR.

April 11, 2012

The court on March 19, 2012, took evidence consisting of the testimony of the parties and heard argument on Defendant's plea of the statute of limitations to Count I alleging Fraud, Fraudulent Concealment, and Fraudulent Inducement as well as Defendant's demurrer to that count and the remaining ones in Plaintiff's First Amended Complaint. Plaintiff alleges that Defendant induced him to invest in an L.L.C. talent-management company with lies and misrepresentations, leaving him out of pocket of at least $82,053.67. Plaintiff alleges that, instead of spending the funds on legitimate business transactions, Defendant misappropriated them for personal expenses and other unauthorized transactions. With leave granted, Plaintiff filed a First Amended Complaint, which displaced the original Complaint. The First Amended Complaint, as was the original, consists of about thirty pages and is a long, rambling recitation of the parties' dealings

and the claims Plaintiff identifies to them. Each side's position and the court's decision on each count is as follows.

*Count I: Fraud, Fraudulent Concealment,*
*and Fraudulent Inducement*

## A. *Plea of the Statute of Limitations*

Defendant invokes Va. Code § 8.01-243 contending that the two-year limit for filing this count expired before Plaintiff filed suit on October 22, 2010. Defendant relies on the discovery rule governing accrual, which states that a cause of action for fraud accrues "when such fraud . . . is discovered or by the exercise of *due diligence reasonably* should have been discovered." Va. Code § 8.01-249(1) (emphasis added).

Defendant argues that Plaintiff's allegations demonstrate that the alleged fraud could have reasonably been discovered with due diligence beginning in June 2008 before Plaintiff invested in Black Water Management, L.L.C., the company Plaintiff says was organized as an L.L.C. with the parties as co-managing members. Specifically, Plaintiff alleges that "[i]n the beginning of June 2008, [Plaintiff] asked [Defendant] for complete documentation pertaining to [Defendant's] representations." This refers to contracts Plaintiff alleges Defendant had with an identified musician and a music group and documents showing Defendant had spent $71,230.51 in his existing music-talent business that would represent Defendant's contributions to their anticipated joint business. (Pl.'s Compl. ¶¶ 13-17.)

Defendant cites *White v. Potocska*, 589 F. Supp. 2d 631, 642 (2008), stating that, in a fraud case, a Plaintiff must show that he relied on the representations of another, and where one makes his own investigation into the subject matter, whether complete or not, he may not say that he relied on the representations. Plaintiff counters that he did not conduct an investigation and that *White* is inapposite because *White* involved the purchase of a business in an arms-length transaction; here, the parties should be considered promoters, those who undertake to form a corporation and to procure for it rights, instrumentalities, and capital to carry out the business. As promoters, Plaintiff argues, the parties owe each other fiduciary duties. Therefore, Plaintiff claims he was entitled to place trust in the Defendant. The court disagrees.

"[T]o establish fraud, it is essential that the defrauded party demonstrates the right to reasonably rely upon the misrepresentation." *American Sur. Co. v. Hannah*, 143 Va. 291, 301, 130 S.E. 411, 414 (1925). Furthermore, the reliance must be justifiable.

> It is essential . . . that the party addressed should trust the representation and be so thoroughly induced by it that, *judging*

*from the ordinary experience of mankind,* in the absence of it he would not, in all reasonable probability, have entered into the contract or other transaction.

*Id.* (emphasis added).

Due diligence requires the Plaintiff to act with "such a measure of prudence, activity, or assiduity, as is properly expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances." *STB Mktg. Corp. v. Zolfaghari,* 240 Va. 140, 144, 393 S.E.2d 394, 397 (1990). Thus, "[t]he reliance alleged by the Plaintiff must be *objectively reasonable." Metrocall of Del. v. Continental Cellular Corp.,* 246 Va. 365, 374, 437 S.E.2d 189, 193-94 (1993) (emphasis added).

Here, Plaintiff, by his own statement, admits that he asked Defendant for "complete documentation pertaining to [Defendant's] representations." (Pl.'s Compl. ¶ 14.) Plaintiff goes on to state that, even though Defendant was not immediately forthcoming with such information, he wrote two initial checks totaling $49,675, and later others, providing all the funds for their proposed business venture he now seeks to recover from Defendant. (Pl.'s Compl. ¶¶ 14-17.)

It is difficult to characterize Plaintiff's allegations of trust in Defendant as objectively reasonable given that no long-running personal history of acquaintanceship or any track record of doing business together is alleged or otherwise stated in the testimony and even considering the parties were fiduciaries as Plaintiff contends. Plaintiff testified that he met Defendant by a referral or introduction through a third party before their proposed joint venture. Thus, when Plaintiff sought "complete documentation" from Defendant in June 2008, such as the alleged signed contracts with the identified musicians, Plaintiff sought the documented proof from the Defendant for his own assurances. Nonetheless, Plaintiff provided money to Defendant without the requested proof of the contracts and other documentations alleged, stating that he did "not conduct any investigation into [Defendant's] representations at that time, [taking] [Defendant] at his word." (Pl.'s Compl. ¶ 16.)

Finally, Plaintiff argued during the hearing that the question of justifiable reliance is a question of fact for the jury, not a question of law for the court. The court disagrees. Courts have dismissed fraud claims based on the above analysis during the demurrer stage or its equivalent. *See Schmidt v. Household Fin. Corp., II,* 276 Va. 108, 166, 661 S.E.2d 834, 838 (2008). Thus, there being no allegation that Plaintiff could not have discovered the fraud any sooner than the two-year allotted time immediately preceding the filing of the action, the claims are time-barred under the provisions of Va. Code §§ 8.01-243, 8.01-249.1. *Id.*

## B. *Demurrer*

The court need not address the fraud count for purposes of the demurrer.

### Count II: Wrongful Conversion

Defendant contends that the Demurrer to this count should be sustained because Plaintiff has no standing to sue for conversion because the funds alleged to have been converted belonged to the business entity after Plaintiff wrote four checks payable to the entity, which was operating either as a partnership or a limited liability company. Plaintiff contends that, under Va. Code § 13.1-1007, he retained rightful ownership of the funds because the entity with the L.L.C. designation would have been illegal as a partnership and thus void. The court disagrees.

The Operating Agreement, attached to the Complaint and signed by both parties, shows the parties' intent to operate a business together as Black Water Management, L.L.C., or a business as a partnership up to the time the L.L.C. came into being. Thus, when Plaintiff wrote checks "payable to BWM," the funds became the property of the business entity. A cause of action for conversion would require that the entity in place that received the funds be named. A recovery by that entity, the L.L.C., by way of a derivative claim, would then be distributable to the members according to their interests. For the reasons stated herein, the demurrer to this count will be sustained.

### Count III: Rescission of the Operating Agreement and Declaratory Judgment

In this count, Plaintiff seeks rescission of the Operating Agreement of the L.L.C. and a declaratory judgment. In his brief, Defendant did not address the declaratory judgment issue. Plaintiff argues that he is entitled to a declaratory judgment because he and Defendant were "never legally associated" and that Defendant is the "exclusive owner" of Black Water Management. The court disagrees and finds the case is not a proper one for declaratory judgment.

> The intent of the [Declaratory Judgment Act] is to have courts render declaratory judgments which may guide parties in their future conduct in relation to each other, thereby relieving them from the risk of taking undirected action incident to their rights, which action, without direction, would jeopardize their interests.

*Liberty Mut. Ins. Co. v. Bishop*, 211 Va. 414, 421, 177 S.E.2d 519, 524 (1970).

While the Act "is to be liberally interpreted and administered with a view to making the courts more serviceable to the people," Va. Code § 8.01-191, courts may only issue declaratory judgments "in cases of actual controversy when there is antagonistic assertion and denial of right." *Treacy v. Smithfield Foods, Inc.*, 256 Va. 97, 103, 50 S.E.2d 503, 506 (1998) (quotation marks and citations omitted). "Thus, the Declaratory Judgment Act does not give trial courts the authority to render advisory opinions, decide moot questions, or answer inquiries that are merely speculative." *Id.* at 104, 506 (citations omitted). Plaintiff alleges that there is a question of whether he and Defendant were legally associated and that Plaintiff's "rights in the artists" are affected thereby. There is nothing about the allegations which requires direction lest the parties' actions would be jeopardized. Moreover, the case is not a proper one for declaratory relief without the presence of the L.L.C.

By Plaintiff's own account, rights to artists and royalties are due the L.L.C., not Plaintiff individually. Any such right would be the property of the entity and, in turn, the members according to their interests through the Operating Agreement. The L.L.C. has not been made a party. There is no allegation that the L.L.C., through its management, has denied Plaintiff his rights under an agreement to share in any benefits to be derived from his membership. There is no question that Plaintiff and Defendant were legally associated; the Operating Agreement signed by both parties show their legal association. So, declaratory relief can only be available if the L.L.C. is a party.

As for rescission of the Operating Agreement, Defendant contends that the Demurrer should be sustained because the facts and exhibits contained in the First Amended Complaint contradict Plaintiff's claims relating to the Operating Agreement signed by both parties. Grounds for rescission are fraud, innocent misrepresentation, unilateral mistake induced by fraud, or mutual mistake. *See Va. Natural Gas Co. v. Hamilton*, 249 Va. 449, 457 S.E.2d 17 (1995); *Nationwide Mut. Ins. Co. v. Muncy*, 217 Va. 916, 234 S.E.2d 70 (1977). While Plaintiff's fraud claims are time-barred, the fraud alleged can be considered in connection with a claim for rescission, an equitable remedy. However, rescission of the Operating Agreement would affect the rights and interests of the L.L.C., which needs to be a named party in this action. Therefore, the demurrer is sustained because the L.L.C. is absent as a party.

*Counts IV and V: Statutory Business Conspiracy,*
*Common Law Civil Conspiracy, and Attempted Conspiracy*

Plaintiff alleges that Defendant conspired with other parties, including Defendant's wife, to harm Plaintiff in order to advance the interests of Defendant and his wife. Defendant, relying on *Caudill v. Wise Rambler*

*Inc.*, 210 Va. 11, 13 (1969), contends that the demurrer should be sustained because Plaintiff failed to allege any facts that show he has suffered any monetary loss. The court disagrees, but nonetheless, the court finds that Plaintiff's allegation for statutory conspiracy under Va. Code §§ 18.2-444, 18.2-500 is defective for two reasons.

First, a business conspiracy exists if "any two or more persons . . . combine, associate, agree, mutually undertake, or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatever." Id. "To prove a violation of this statute, a Plaintiff must show that the conspirators acted with malice, meaning that 'the Defendant acted intentionally, purposefully, and without justification'." *BB&T Ins. Servs. v. Thomas Rutherfoord, Inc.*, 80 Va. Cir. 174, 184 (2010). In other words, malice must be alleged. *See Simmons v. Miller*, 261 Va. 561, 578, 544 S.E.2d 666, 677 (2001) (requiring Plaintiff to allege that conspirators acted with legal malice; in other words, Defendants acted intentionally, purposefully, and without lawful justification). No such allegation is present here.

Second, "to survive demurrer, an allegation of conspiracy, whether criminal or civil, must at least allege an unlawful act or an unlawful purpose." *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402 (1985). Plaintiff has failed to do so. Rather, Plaintiff alleges that the conspiracy was aimed at (1) "stringing him along and wasting his time," (2) destroying "Purported BWM," blaming its destruction on Plaintiff, and concealing its non-existence, (3) depriving Plaintiff of his rights to commission and profits related to certain artists (even though Plaintiff has not alleged he personally had contracts with these artists), and (4) damaging Plaintiff's career and professional relationships and professional reputation. These allegations do not present any unlawful act or unlawful purpose. These allegations, if proven, would only amount to a breach of contract under the Operating Agreement.

Furthermore, a conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract is insufficient to establish a civil claim under Va. Code § 18.2-500. *Station # 2, L.L.C. v. Lynch*, 280 Va. 166, 174, 695 S.E.2d 597, 541 (2010). Here, Plaintiff has not claimed that the alleged conspirators had an independent duty arising outside the contract. Therefore, the court will sustain the demurrer.

As for common law conspiracy, there are four elements to state a prima facie cause of action: (1) a combination of two or more persons; (2) to accomplish, by some concerted action; (3) some criminal or unlawful purpose or some unlawful purpose by a criminal or unlawful means; and (4) resultant damage caused by the Defendant's acts committed in furtherance of the conspiracy. *Werth v. Fire Cos. Adjustment Bureau Inc.*, 160 Va. 845, 854, 171 S.E. 255, 258 (1933).

As stated in *Hechler Chevrolet*, "[t]here can be no conspiracy to do an act which the law allows." 230 Va. at 402, 337 S.E.2d at 748. As discussed earlier, Plaintiff fails to allege any unlawful act or unlawful purpose. The above considerations apply to Plaintiff's claim of attempted conspiracy codified under Va. Code § 18.2-499(B).

Accordingly, for the foregoing reasons, the demurrer to counts IV and V are sustained.

*Counts VI and VII: Tortious Interference with Contract*
*and Tortious Interference with Business Expectancy*

Plaintiff alleges Defendant encouraged artists to terminate any relationship they had with him, to keep clients from him, and to help one Colin Healy to "break his contract" with Plaintiff. Defendant contends that the demurrer to the claim of Tortious Interference with Contract should be sustained because, according to Plaintiff's own allegations, Plaintiff failed to allege any facts to show that he personally had any contractual rights or relationships with anyone. Defendant contends that any rights to artists alleged by Plaintiff belong to Black Water Management, L.L.C. In addition, Defendant argues that, under Article XII, paragraphs 12.6-12.8, of the attached Operating Agreement, L.L.C. members have no personal contract right or expectancy. The court agrees.

Where tortious interference is alleged, "[t]he fundamental and critical assumption is the existence of a valid contract." *BB&T Ins.*, 80 Va. Cir. at 177. Without any facts showing Plaintiff had a personal contract with the artists, he has no standing to sue.

Plaintiff's recourse is a derivative suit brought as a managing member to enforce a corporate cause of action where the corporation for some reason has not sued to protect its own rights. *See* Va. Code § 13.1-1042. Furthermore, section B of the statute provides that:

[n]o member may commence a derivative proceeding until:
1. A written demand has been made on the limited liability company to take suitable action; and
2. Ninety days have expired from the date delivery of the demand was made unless (i) the member has been notified before the expiration of 90 days that the demand has been rejected by the limited liability company or (ii) irreparable injury to the limited liability company would result by waiting until the end of the 90-day period.

Since Plaintiff brought suit against Defendant in his personal capacity rather than in a derivative suit and he has failed to show that he has complied with the governing statute, the demurrer is sustained as to this count.

As for the Tortious Interference with Business Expectancy claim, the claim is the L.L.C.'s, as discussed above. Therefore, the demurrer is sustained.

## Count VIII: Accounting

Defendant contends that the demurrer should be sustained because Plaintiff has brought suit against Defendant in his individual capacity seeking an accounting of Black Water Management, L.L.C., when neither the Defendant in his capacity as a managing member of the business nor the business itself are before the court. The court agrees. Plaintiff has not properly sought accounting pursuant to Va. Code § 13.1-771. Thus, without the proper parties for an action for accounting, the court will sustain the demurrer.

## Count IX: Breaches of Operating Agreement

Defendant contends that the demurrer should be sustained because Plaintiff lacks standing to bring a claim directly against Defendant in his individual capacity because neither the Virginia Limited Liability Act nor the Operating Agreement provides for a direct cause of action by an individual against another member for breach of the Operating Agreement. Plaintiff contends that L.L.C. members can create direct causes of action for breaches of fiduciary duties by including such a provision in the Operating Agreement. Plaintiff points to section 12.5 of the Operating Agreement, which states that "[a]ll Members, Managers, and Officers shall owe a duty of care and a duty of loyalty to the Company and particularly to the other Members."

The court agrees. Shareholders and the corporation are free to vary commercial rules by contract; such provisions can also be included in an L.L.C.'s operating agreement. *Remora Investments, L.L.C. v. Orr*, 277 Va. 316, 324, 673 S.E.2d 845, 849 (2009). The demurrer is overruled as to this count.

## Count X: Breach of Fiduciary Duties

The demurrer is overruled as to this count based on the previous discussion.

## Conclusion

Thus, the demurrer is sustained in part and overruled in part.

Mr. Caudle is directed to draft a suitable order, with exceptions noted, and submit the same for entry. The order shall permit Plaintiff to file an amended

complaint within 120 days from its entry with responsive pleadings due on or by thirty days of receipt of any amended pleading.

## May 11, 2012

The court on May 10, 2012, heard argument on defendant's motion to vacate the nonsuit order entered May 2, 2012, to limit the scope of plaintiff's nonsuit order, and to enter defendant's order pursuant to the Court's letter opinion dated April 11, 2012.

As for vacating the nonsuit order, defendant contends that plaintiff's nonsuit as to Count IX: Breaches of the Operating Agreement should be vacated because plaintiff took a nonsuit in an earlier case filed in the Circuit Court of Arlington County on the same cause of action. Plaintiff argues that the suit in Arlington was a different cause of action and sought different relief. The Court agrees.

In the Arlington suit, plaintiff sought to compel the production of financial records as provided for in Va. Code § 13.1-1023(C)(1) as well as injunctive and other relief against the defendant as a managing member of Black Water Management, L.L.C. Here, plaintiff brought a number of common law and statutory claims aimed at recovering monetary damages from the defendant in his personal capacity. Because the causes of action relative to Count IX are different in the two suits, plaintiff otherwise retains the right to a first nonsuit pursuant to Va. Code § 8.01-380(B). That right is afforded as to these claims therein.

As for otherwise limiting the scope of plaintiff's nonsuit order, defendant contends that the fraud count under Count I of the Amended Complaint should be dismissed with prejudice because the issue had been submitted to the court for decision before the request for a nonsuit was made. The court agrees. Under Va. Code § 8.01-380(A), plaintiff is prohibited from taking a nonsuit unless the motion is made "before the action has been submitted to the court for decision." *Transcontinental Ins. Co. v. RBMW, Inc.*, 262 Va. 502, 514, 551 S.E.2d 313, 319 (2001). Plaintiff's claim of fraud has been previously and finally yielded to the court for consideration and decision with the court resolving the issues by a letter ruling dated April 11, 2012. *See Liddle v. Phipps*, 263 Va. 391, 559 S.E.2d 690 (2002). These cannot be nonsuited.

As for the remaining counts which were the subject of demurrer and resolved in the April 11, 2012, letter by the court sustaining in part and overruling in part, the situation is different. While the demurrer had been yielded to the court for decision, a demurrer by its very nature does not contemplate necessarily a final disposition upon a decision. Here, the court allowed an amendment to those aspects of the pleadings deemed defective that were the subject of the demurrer. The Supreme Court of Virginia "has consistently held that an order merely sustaining or overruling a demurrer

to a declaration or motion for judgment is not final. An order sustaining such a demurrer, in order to be final within the meaning of [the Code], must go further and dismiss the case." *Bibber v. McCreary*, 194 Va. 394, 395, 73 S.E.2d 382, 383 (1952). The court in such cases liberally grants leave to amend; therefore, the remaining counts where the demurrer was sustained can be the subject of the nonsuit order.

The court today enters an order covering the decision in the April 11, 2012, letter, and the issues resolved in this letter relative to defendant's motion to vacate, with exceptions noted.