985 F.2d 157
 Fed. Sec. L. Rep. P 97,343
Richard H. BRUMBAUGH, Plaintiff-Appellant,
v.
PRINCETON PARTNERS, Defendant-Appellee,
and
Pennvest Company; Thomas L. Ledbetter; Joseph V. Egan,
III; Marc A. Zaid; Ralph M. Feaver; Daniel B. Litwin;
Howard S. Morris; Gregory J. Russell; John Hancock
Distributors, Incorporated; John Hancock Mutual Insurance
Company; James W. Walls, Sr.; Radnor Industries, Limited;
Vidco Investments Limited, Incorporated; Arthur Anderson &
Company; Goodman & Ewing; Industrial Valley Bank & Trust
Company; Thomas J. Maher & Company, Incorporated; John
Doe; James Doe; Richard Doe; John Roe; James Roe;
Richard Roe, Defendants.
Richard H. BRUMBAUGH, Plaintiff-Appellant,
v.
PRINCETON PARTNERS, Defendant-Appellee,
and
Pennvest Company; Thomas L. Ledbetter; Joseph V. Egan,
III; Marc A. Zaid; Ralph M. Feaver; Daniel B. Litwin;
Howard S. Morris; Gregory J. Russell; John Hancock
Distributors, Incorporated; John Hancock Mutual Insurance
Company; James W. Walls, Sr.; Radnor Industries, Limited;
Vidco Investments Limited, Incorporated; Arthur Anderson &
Company; Goodman & Ewing; Industrial Valley Bank & Trust
Company; Thomas J. Maher & Company, Incorporated; John
Doe; James Doe; Richard Doe; John Roe; James Roe;
Richard Roe, Defendants.
 Nos. 91-1682, 92-1909.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 1, 1992.
Decided Feb. 5, 1993.
 
 Deborah Ann Solove, Columbus, OH, for plaintiff-appellant.
 Arlene Fickler, Hoyle, Morris & Kerr, Philadelphia, PA (Jane C. Celentano, on brief), Philadelphia, for defendant-appellee.
 Before RUSSELL, WILKINSON, and NIEMEYER, Circuit Judges.
 OPINION
 WILKINSON, Circuit Judge:
 
 
 1
 This securities fraud suit poses the question of when a plaintiff is put on inquiry notice of alleged misrepresentations for purposes of starting a statutory limitations period. In 1982, Richard Brumbaugh purchased one unit in a limited partnership from Princeton Partners. The partnership was to own and operate commercial properties while creating tax losses to shelter the income of the limited partners. The IRS audited the partnership, however, and disallowed the tax deductions in a summary report dated October 28, 1988. Brumbaugh then filed this action on November 23, 1990, alleging common law fraud and violations of state and federal securities laws by Princeton Partners. The district court dismissed the complaint on statute of limitations grounds, 766 F.Supp. 497. Because the prospectus sufficiently disclosed the risks that subsequently led the IRS to disallow the deductions, we believe that the investor was on inquiry notice and that the statutory limitations period began to run on the date of the sale of the limited partnership unit. In so ruling, we affirm the judgment of the district court that plaintiff's claims were time barred.
 
 I.
 
 2
 Princeton Partners was formed in 1982 to own and operate commercial properties leased to Wal-Mart Stores, Inc. in Joplin, Missouri and Princeton, Kentucky. The General Partner is Pennvest Company; thirty limited partnerships were sold to investors. Princeton Partners acquired the properties from Vidco Investments, Ltd. ("Vidco") for $2.3 million. Princeton Partners did not pay cash for the properties; instead, it signed a non-recourse note, secured by notes from the investors, for the purchase price. The interest rate on the note averaged twenty-six and a half percent. The note provided for additional borrowing by Princeton Partners during each year of the note to meet the debt obligations to Vidco and other partnership expenses. In addition, Vidco loaned the partnership $460,000 cash, which was evidenced by a separate note. Vidco retained the right to approximately thirty-two percent of the rentals through 1985 and fifty percent of all rents that exceeded a forecasted schedule through 1992; its share of the rental income was over $300,000 through 1985. Vidco also retained the right to relet any terminated or defaulted leases.
 
 
 3
 Thomas Ledbetter, Joseph Egan, Marc Zaid, Ralph Feaver, Daniel Litwin, Howard Morris, and Gregory Russell were partners of Pennvest Company and the promoter-organizers of Princeton Partners. Litwin, Morris and Russell were also equal shareholders in Vidco. In a separate agreement, Vidco assigned fifty percent of its profits from the transaction to Pennvest Corporation, which was jointly owned by Ledbetter, Egan, Zaid and Feaver.
 
 
 4
 Princeton Partners' debt to Vidco was scheduled to come due in 1993. Under the agreement, the total principal due at that time was approximately $4.4 million. In order to repay this obligation, Princeton Partners could (1) repay the loan in full or (2) exercise the Refinancing Option and sell a thirty-seven percent interest in the property to Vidco in exchange for $300,000 cash and a $2 million reduction in principal, with the remainder of the debt to be refinanced by a thirty-year mortgage.
 
 
 5
 Princeton Partners marketed the limited partnership units via a Private Placement Memorandum ("PPM") which was received by all prospective investors. The PPM begins with the warning: "THIS OFFERING INVOLVES A SUBSTANTIAL DEGREE OF RISK (INCLUDING RISKS RELATING TO BENEFITS DERIVED FROM TAX ADVANTAGED INVESTMENTS), SUBSTANTIAL PROFITS TO THE PROMOTERS, SUBSTANTIAL LIMITATIONS ON ECONOMIC RETURN AND SUBSTANTIAL RESTRICTIONS ON TRANSFERABILITY OF THE UNITS." On the second page investors are further cautioned that "EACH INVESTOR SHOULD CONSULT HIS OWN PERSONAL COUNSEL, ACCOUNTANT AND OTHER ADVISORS AS TO LEGAL, TAX, ECONOMIC, AND RELATED MATTERS CONCERNING THE INVESTMENT DESCRIBED HEREIN AND ITS SUITABILITY FOR HIM." The introduction also advises that the investment is suitable only for investors in high marginal tax brackets who can afford to risk a "NON-LIQUID, SPECULATIVE INVESTMENT."
 
 
 6
 The specific risks discussed in the "Risk Factors" section of the prospectus add detail to the warnings included in the introduction. Under "Tax Risks," the PPM lists thirteen separate risks that could jeopardize the tax deductions expected from the investment. Included in these risks, among others, are the possibilities that the IRS may find that (1) Vidco and the partnership are not separate entities, (2) the interest deductions lacked "substantial economic effect," and (3) there was no profit objective in the transaction. The result of these findings would be that the deductions claimed by the partnership would be disallowed. The Risk Factors section also included subsections detailing "Operating Risks" and "Investment Risks." The Operating Risks included "Limitation on Economic Return" for the limited partners which would result from Vidco's retention of a share of the rental income and other rights in the properties. Investment Risks included "No Participation in Management" by the limited partners, "Limited Transfer and Illiquidity of Units," and the "Risk of Balloon Note" being beyond the ability of the partnership to repay. A separate seventeen-page section, "Summary of Federal Income Tax Consequences," provided even more details about possible adverse treatment of the transaction by the IRS. Finally, the PPM was accompanied by the forty-five page opinion of tax counsel assessing the tax issues raised by the transaction.
 
 
 7
 The PPM's warnings of adverse treatment by the IRS eventually came to pass. In a summary report dated October 28, 1988, the IRS disallowed the losses claimed by the partnership on the grounds that the transaction lacked "economic reality" and was not entered into for profit, but for tax advantage. The IRS listed ten factors that led it to this conclusion:
 
 
 8
 1. Lack of Partner Expertise and Experience
 
 
 9
 2. Timing of Transactions and Relation of the Parties Involved
 
 
 10
 3. "Front End Write-Offs"
 
 4. Unrealistic Debt
 5. Lack of Equity Build-Up
 
 11
 6. Limited Transferability and Illiquidity of Partner's Interest's [sic]
 
 
 12
 7. Use of Tenant Rentals to Service Underlying Debt
 
 8. Substantial Economic Risks
 9. Questionable Residuary Value
 
 13
 10. Loss of Revenue to the United States Government
 
 
 14
 The combination of these factors persuaded the IRS that it was unlikely that Princeton Partners would ever be able to repay the debt to Vidco or ever show a profit from the transaction. The tax deductions claimed by the limited partners, however, would provide a tax savings that approximated their initial investments within six years. The IRS also surmised that the investors were likely to walk away from the property without repaying the note or ever having received income. Thus, the partners would never pay taxes on the investment. Accordingly, the IRS concluded that the transaction was an "abusive tax shelter" and disallowed the partnership deductions.
 
 
 15
 Disgruntled by this turn of events, Brumbaugh, a West Virginia attorney, filed this lawsuit on November 23, 1990 to recover his investment in the limited partnership and other related damages. After listing the conclusions of the IRS summary report, the complaint alleged that the PPM failed to state that the partnership would not be treated by the IRS as a partnership for tax purposes, that the entire transaction was a "sham," that Vidco and Pennvest were the real owners of the property and the beneficiaries of the transaction, that investors in the limited partnership should anticipate a negative return, and that investors would not develop any equity in the property. Brumbaugh asserted that these alleged deceptions violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Brumbaugh also asserted claims under the West Virginia common law of fraud and negligence and under the West Virginia Blue Sky law. W. Va.Code § 32-4-410. The complaint further stated that Brumbaugh did not know of the alleged unlawful acts until November 24, 1988, when Brumbaugh received his copy of the IRS report.
 
 
 16
 Defendants filed a motion to dismiss on the grounds that the statute of limitations had elapsed for all of the counts. The district court agreed. See 766 F.Supp. 497 (S.D.W.Va.1991). That court dismissed the federal claim on the basis of the three-year statute of repose announced by the Supreme Court in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, --- U.S. ----, ----, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991) ("Litigation instituted pursuant to § 10(b) and Rule 10b-5 therefore must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation."). The court dismissed both state claims on the basis of the three-year statute of repose under the Blue Sky law. W.Va.Code § 32-4-410(e) ("No person may sue under this section more than three years after the sale [of the securities]."). Brumbaugh appealed the dismissal of his common law fraud claim to this court.
 
 
 17
 While that appeal was pending, Congress passed a law eliminating the retroactive effect of Lampf. Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102-242, § 476, 105 Stat. 2236, 2387 (1991), § 27A of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa-1. Brumbaugh believed his federal claim was viable under pre-existing law, and moved the district court for reinstatement of that claim. The district court denied this motion, believing that the Fourth Circuit rule prior to Lampf required it to incorporate the most analogous state statute of limitations. Howard v. Haddad, 962 F.2d 328, 330 n. 3 (4th Cir.1992). Applying the three-year statute of repose from the West Virginia Blue Sky law, the district court held that Brumbaugh's federal claim was barred. Brumbaugh appealed from that determination and we consolidated the two appeals. We have before us now the dismissal of both Brumbaugh's common law claim and federal securities claim; Brumbaugh has abandoned his claim under the Blue Sky law.
 
 II.
 
 18
 Brumbaugh argues that the district court erred by failing to apply a "discovery rule" to the running of the statute of limitations on both his state common law and federal claims. Brumbaugh urges that the appropriate statute of limitations for common law fraud is not the absolute three-year Blue Sky statute of repose applied by the district court, but rather, the two-year limit for actions not otherwise provided for in the West Virginia code. W.Va.Code § 55-2-12. According to Brumbaugh, that statute of limitations should be tolled until the plaintiff has had an opportunity to discover the wrong. Stemple v. Dobson, 184 W.Va. 317, 400 S.E.2d 561, 564-65 (1990).
 
 
 19
 With respect to his federal claim, Brumbaugh similarly argues that the district court erred by failing to apply a federal discovery rule when incorporating the most analogous state statute of limitations. Brumbaugh concedes that the statute of limitations from the West Virginia Blue Sky law provides the relevant time period, but he contends that federal law controls when that period begins to run. See Newman v. Prior, 518 F.2d 97, 100 (4th Cir.1975), overruled on other grounds by Newcome v. Esrey, 862 F.2d 1099, 1101 (4th Cir.1988) (en banc). But see O'Hara v. Kovens, 625 F.2d 15, 19 (4th Cir.1980) (declining to "engraft" tolling for legal incompetency onto a Maryland statute of limitations incorporated for purposes of § 10(b) and Rule 10b-5).
 
 
 20
 We need not decide whether the district court erred by failing to apply a discovery rule to Brumbaugh's various claims. Even under a discovery rule those claims still must be dismissed.[1] The statute of limitations begins to run when the fraud is discovered "or should have been discovered by the exercise of due diligence." Newman, 518 F.2d at 100 (citations omitted). We think that as a matter of law, Brumbaugh has failed to exercise due diligence in uncovering his claims of fraud.
 
 
 21
 It is true that doctrines such as the discovery rule serve to soften the hard edges of statutory limitations periods. Time may be necessary for a plaintiff to make his case; the facts which underlie a plaintiff's allegations may only gradually come to light. Commencement of a limitations period need not, however, await the dawn of complete awareness. There are three drawbacks to running a limitations period only after a plaintiff gains full knowledge of securities fraud. First, the plaintiff is discouraged from taking the actions necessary to bring the fraud to light. Second, the defendant loses the security of knowing when legal action against him has been foreclosed. Here Brumbaugh waited some eight years after he purchased his limited partnership unit in Princeton Partners before filing this lawsuit. This period is more than two and half times as long as any of the enumerated statutory limitations periods under which he brought suit.[2] Third, the defendant is prejudiced in meeting the plaintiff's allegations. Memories fade, documents are lost, witnesses become unavailable. In sum, plaintiffs should not be able to coerce settlements simply because aging has improved an originally meritless claim--here by demonstrating the downside of a risky investment.
 
 
 22
 Courts are thus justified in applying a stringent standard to securities claims arising from transactions long past. The objective standard of due diligence requires reasonable investigation of the possibility of misrepresentation once an individual has been placed on inquiry notice of wrongdoing. See Fox v. Kane-Miller Corp., 542 F.2d 915, 917 (4th Cir.1976). Where the underlying facts are undisputed, the issue of whether the plaintiff has been put on inquiry notice can be decided as a matter of law. Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 128 (1st Cir.1987). Inquiry notice is triggered by evidence of the possibility of fraud, not by complete exposure of the alleged scam. Kennedy v. Josephthal & Co., 814 F.2d 798, 802 (1st Cir.1987). Merely bringing suit after the scheme has been laid bare through the efforts of others, in this case the IRS, will not satisfy the requirements of due diligence when there have been prior warnings that something was amiss.
 
 
 23
 The PPM contained a host of prior warnings making it plain that Brumbaugh was purchasing, to put it mildly, a highly speculative investment. Brumbaugh is charged with constructive knowledge of the contents of the PPM, Myers v. Finkle, 950 F.2d 165, 167 (4th Cir.1991), which was incorporated by reference in the complaint. See Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir.1991). The PPM specifically warned of the possibility that the IRS would disallow the tax deductions that flowed from the investment. That risk came to pass--and now, in hindsight, Brumbaugh claims that he was defrauded.
 
 
 24
 Equity would not be served by tolling the limitations periods in this case. The PPM put Brumbaugh on inquiry notice of the violations that he now charges. A comparison of the complaint and the PPM serves to illustrate this point. The complaint alleges that the PPM misleadingly failed to disclose
 
 
 25
 a) that the partnership would be taxed as a corporation rather than a partnership. (The PPM warns: "no assurance can be given that the Partnership would not be treated as an association taxable as a corporation.")b) that the transaction was a sham. (The PPM warns: "If ... a profit motive cannot be established, the Partners may not be able to deduct expenses.")
 
 
 26
 c) that all economic benefit in the transaction was to be received by the promoters. (The PPM warns: "THIS OFFERING INVOLVES ... SUBSTANTIAL PROFITS TO THE PROMOTERS.")
 
 
 27
 d) that Vidco was the de facto owner of the properties. (The PPM warns: "The Service might attempt to disallow ... the interest deductions ... on the theory that .. the Vidco Note is equity rather than debt.")
 
 
 28
 e) that investors should anticipate a negative rate of return. (The PPM warns: "NO WARRANTY IS OR CAN BE MADE AS TO THE FUTURE OPERATIONS OR OF THE AMOUNT OF ANY FUTURE INCOME OR LOSS FROM THE PARTNERSHIP.")
 
 
 29
 f) that the economic benefits to the promoters were to the detriment of the investors. (The PPM warns: "The General Partner, Vidco and their Affiliates will receive substantial compensation from the Partnership regardless of whether any sums are distributed to the Limited Partners.")
 
 
 30
 g) that the expenses of the partnership would not be deductible. (The PPM warns: "The Service also might contend that certain payments ... are nondeductible capital costs.")
 
 
 31
 h) that the investors would not develop any equity in the property. (The PPM warns: "It is anticipated that, for the period commencing with Closing and ending December 31, 1992, rental receipts payable to the Partnership under the Tenant Leases will be substantially less than the Partnership's interest obligations on the Vidco Note.")
 
 
 32
 i) that the forecasts and the opinions were untrue. (The PPM warns: "NO REPRESENTATION OF ANY KIND IS MADE RESPECTING THE FUTURE ACCURACY OR COMPLETENESS OF THESE FORECASTS," and "THE CONCLUSIONS REACHED IN THE TAX OPINION ARE RENDERED WITHOUT ASSURANCE THAT SUCH CONCLUSIONS HAVE BEEN OR WILL BE ACCEPTED BY THE SERVICE OR THE COURTS.")
 
 
 33
 The prospectus warned of the possible occurrence of each of the events that Brumbaugh now alleges were fraudulently concealed. The facts on which the IRS relied in disallowing the deduction, and which Brumbaugh parrots in his complaint, were discussed in the PPM. The PPM warns that the IRS might draw the very conclusions that it did in disallowing the deductions. The PPM also advises prospective investors to seek independent legal and financial advice before investing; if Brumbaugh had followed this advice, he would have uncovered the flaws of which he now complains. Faced with numerous warnings of an investment's potential risk, the investor cannot simply wait to see if those risks materialize before filing suit. We hold, therefore, that when a prospectus sufficiently discloses the risks inherent in an investment, the investor is on inquiry notice of his claims and the limitations period begins to run from the date of sale on claims of fraud in that prospectus. Accord Kennedy, 814 F.2d at 803; Goldstandt v. Bear, Stearns & Co., 522 F.2d 1265, 1269 (7th Cir.1975); Harner v. Prudential Sec. Inc., 785 F.Supp. 626, 634-39 (E.D.Mich.1992); Landy v. Mitchell Petroleum Technology Corp., 734 F.Supp. 608, 616-18 (S.D.N.Y.1990); Bender v. Rocky Mountain Drilling Assocs., 648 F.Supp. 330, 334-35 (D.D.C.1986).
 
 
 34
 The only fact not included in the PPM upon which the IRS relied in disallowing the deductions was Vidco's domicile in the Virgin Islands. Brumbaugh did not include this fact in his complaint, although he does mention it in his brief to this court. The IRS mentioned this fact only in passing, however, and it was not material to the IRS's central conclusion that the transaction lacked economic substance. The omission of that fact does nothing to alter our conclusion that the PPM placed Brumbaugh on inquiry notice of his claims in 1982 and that those claims are now barred by the statutes of limitations.
 
 III.
 
 35
 For the above reasons, the judgment of the district court is
 
 
 36
 AFFIRMED.
 
 
 
 [1]
 Plaintiff has not pointed out any differences between the West Virginia and federal discovery rules, and we will assume for the purposes of this opinion that they are the same
 
 
 [2]
 This would include the rule announced in Lampf, which controls suits brought after June 20, 1991, and which would plainly bar plaintiff's claim if it were applicable. "The 3-year limit is a period of repose inconsistent with tolling." Lampf, --- U.S. at ----, 111 S.Ct. at 2782