COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Ortiz and Lorish
Argued at Fredericksburg, Virginia


THOM TAENGSAP, ET AL.
                                                    MEMORANDUM OPINION* BY
v.        Record No. 1160-23-4                      JUDGE LISA M. LORISH
                                                    MAY 20, 2025
DR. PHONEXAY MINGSISOUPHANH, ET AL.


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
James P. Fisher, Judge

Benjamin E. Ader (Douglas E. Bywater; Tate Bywater, on brief), for
appellant.

Richard T. Pledger; John S. Wilson (Connor S. Bleakley; Wright
Constable & Skeen, LLP; John S. Wilson, Attorney at Law PLLC,
on brief), for appellees.


Nine years after Phra Chom Taengsap died in a car accident, members of his family filed

a complaint alleging breach of fiduciary duty, fraud, and conversion against Dr. Phonexay

Mingsisouphanh. Mingsisouphanh served both as the administrator of Taengsap's estate and as

attorney-in-fact to Taengsap's siblings and parents under a general durable power of attorney.

The siblings, here the appellants, allege that Mingsisouphanh never delivered the court-ordered

payments they were entitled to receive following the settlement of a wrongful death action. They

argue the circuit court erred in dismissing their fraud, conversion, and breach of fiduciary duty

claims as time-barred. They also argue that the court was wrong to grant summary judgment for

Penn National, which posted the required bond for Mingsisouphanh to serve as estate

administrator. We conclude the circuit court correctly applied the statute of limitations in each

    * This opinion is not designated for publication. *See* Code § 17.1-413(A).

UNPUBLISHED

instance and that Penn National's liability as surety did not extend beyond Mingsisouphanh's role as estate administrator to cover actions taken as attorney-in-fact. Thus, we affirm.

BACKGROUND

In 2011, while Taengsap was a monk at Wat Lao Buddhavong, a Buddhist temple in Catlett, Virginia, he was killed in a car crash. This case centers on the actions taken by Mingsisouphanh, the deputy abbot, or second-in-charge, at the temple, following Taengsap's death. After Mingsisouphanh became the administrator of Taengsap's personal estate, Penn National posted a bond to assure the faithful performance of his duties in that role.

As administrator, Mingsisouphanh filed a wrongful death suit against the driver who killed Taengsap. In 2014, Mingsisouphanh also traveled to rural Thailand to meet with Taengsap's siblings and parents and convinced them to sign general durable power of attorney forms, making him their attorney-in-fact. After winning the wrongful death suit in January 2015—resulting in a settlement award of $392,509.44 to Taengsap's family members— Mingsisouphanh allegedly failed to distribute the money to the siblings or parents as ordered by the court. The parents died later in 2015.

The siblings filed four complaints, each alleging different theories of recovery. In each instance, their claims were dismissed as untimely or otherwise failed to get past summary judgment. Because the nature of the allegations, causes of action, and parties evolved, we briefly recount each iteration here.

The siblings filed their first complaint in October 2020, alleging that Mingsisouphanh committed breach of fiduciary duty, fraud, and conversion, and seeking indemnification from Penn National, who posted the initial $25,000 bond for Mingsisouphanh as estate administrator. That complaint alleged that the wrongful death settlement allotted $392,509.44 to Taengsap's siblings and parents and ordered Mingsisouphanh to increase his bond with Penn National from

$25,000 to $432,000 before distributing these settlement funds. The siblings claimed that the settlement funds were distributed to Taengsap's estate bank account in February and April of 2015, but that they never personally received the money because Mingsisouphanh misappropriated the funds for personal use. While Mingsisouphanh filed an accounting of the estate in June 2016 as part of his duties as estate administrator—attaching copies of the checks he purportedly issued to each beneficiary in the amounts specified in the settlement order—the siblings claimed that they only collectively received $23,009 by wire transfer.

In response to this original complaint, Mingsisouphanh filed a plea in bar raising the statute of limitations against each claim, which the court sustained after a hearing where no evidence was presented. The court granted leave to the siblings to file an amended complaint. Although the siblings filed an amended complaint, they never filed another breach of fiduciary duty or conversion claim, making the July 2021 order sustaining the plea in bar the relevant final ruling on these counts.[1]

In their first amended complaint, the siblings brought a new claim to falsify and surcharge under Code § 8.01-245, realleged fraud as to Mingsisouphanh, and maintained their claim for indemnification against Penn National while also adding Mingsisouphanh to that count. In addition to the facts recited above, the first amended complaint contained additional allegations about the special relationship of trust between Mingsisouphanh and the siblings and parents given the former's religious position and cultural context associated with it. The siblings alleged that Mingsisouphanh's assistant communicated to them in 2013 that a lawsuit had been filed to collect life insurance proceeds and that although they sought updates on the matter, they

_____

[1] A representative for the estate of Taengsap's parents was added as a plaintiff to the third amended complaint, and that complaint alleged, only on behalf of the parents, claims of conversion and breach of fiduciary duty. As we recount below, those claims were ultimately dismissed through a consent order due to lack of standing.

- 3 -

did not receive any. When Mingsisouphanh visited the family in Thailand in 2014, he asked them to open bank accounts so that they could receive the proceeds from Taengsap's life insurance policy. He visited again in 2015 and had them sign documents written in English (later shown to be powers of attorney) without telling them that the wrongful death case had settled or that they had been awarded money from the court. After this, Mingsisouphanh sent them $23,009, and told them it was a gift. The siblings never alleged that they believed this money was related to the life insurance policy or any wrongful death suit. Instead, they alleged that they continued to make requests for information about the lawsuit in 2016 but never received a response. The last request for information they sent was in February 2016, when Mingsisouphanh's secretary told them that there was insufficient evidence to go forward with the wrongful death lawsuit because the parents had died. The complaint reiterated that the siblings understood from this communication that the lawsuit was over and that they would not receive any funds.

The complaint further alleged that the siblings deferred to this communication given their cultural and religious background, which discourages people from questioning a monk. Finally, the siblings alleged the ways Mingsisouphanh had misused the funds for personal gain.

Following the siblings' first amended complaint, the court sustained Mingsisouphanh's subsequent plea in bar raising the statute of limitations against the fraud claim, after a hearing where no evidence was presented. The court then allowed the siblings to amend their complaint again.

In response, the siblings filed a second amended complaint that realleged the claim to falsify and surcharge and the claim for indemnification, seeking both compensatory and punitive damages. In this complaint, the siblings newly alleged that, although Mingsisouphanh received the settlement amount of $392,509.44, deposited it into the estate bank account, and issued

checks to each of Taengsap's siblings and parents as required by the court, he then endorsed each check with his own name as "attorney-in-fact" and deposited them into a private back account out of the Taengsaps' reach.

Mingsisouphanh demurred and filed another plea in bar, arguing that the punitive damages the siblings sought were inappropriate for a claim to falsify and surcharge under Code § 8.01-245. Because Taengsap's parents had died in the interim, Mingsisouphanh also filed a plea in bar on the claim to recover for interests allegedly belonging to the parents, arguing that the siblings lacked standing and that the claims were time-barred. The court agreed that punitive damages were not available for a falsify and surcharge claim and that no personal representative had been appointed to pursue claims on behalf of the parents. The court dismissed all claims relating to the parents and again granted the siblings leave to refile.

The siblings filed a third amended complaint and added Sengprachanh Manivong as the administrator of their parents' estate. This complaint restated the claim to falsify and surcharge under Code § 8.01-245, but sought only $369,500 in compensatory damages, plus interest, dropping the claim for punitive damages. The complaint also sought indemnification against Mingsisouphanh and Penn National, and alleged fraud and conversion claims against Mingsisouphanh in Manivong's name on behalf of the parents. When Mingsisouphanh died on February 24, 2022, the court substituted the administrator of his estate, Burbridge Scott Wash, in his place as a defendant for the limited purpose of defending this action under Code § 8.01-25.

Responding to the siblings' third amended complaint, Penn National moved for summary judgment, arguing that Mingsisouphanh fulfilled his estate administrator duties when he accepted the funds on the siblings' behalf. The court agreed.[2] The court found that there were no material

---

[2] Judge James P. Fisher was the judge that granted summary judgment in this case. Judges Thomas D. Horne and Stephen E. Sincavage both issued other relevant orders in this case.

facts in dispute and that Mingsisouphanh acted under the power of attorney authorizations signed by each family member, who had designated him as their attorney-in-fact. Each power of attorney authorization permitted Mingsisouphanh to "establish, add to, withdraw from, or close my accounts or deposits in banks or other financial institutions," and granted the power to "sign any check, deed, contract, pleading, retirement or disability election, or any other documents" and "receive" and "possess . . . every sum of money, right or interest, due and owing, or that may become due and owing, to me on any and every account, claim, contract or tort." Because Mingsisouphanh's actions were authorized, the court granted summary judgment to Penn National and dismissed the third amended complaint with prejudice.

The siblings appeal.

ARGUMENT

The siblings argue that the court erred in (1) finding that their breach of fiduciary duty, fraud, and conversion claims were time-barred, (2) granting summary judgment for Penn National on their claim that Mingsisouphanh failed to faithfully perform his duties as administrator such that Penn National had to indemnify them for their alleged losses, and (3) dismissing their claim for punitive damages in an action for surcharge and falsification of an account under Code § 8.01-245.

I. The circuit court correctly found that the breach of fiduciary duty, fraud, and conversion claims were time-barred.

Mingsisouphanh raised the statute of limitations as an affirmative defense to the siblings' claims for breach of fiduciary duty, fraud, and conversion through a plea in bar. "A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Cornell v. Benedict*, 301 Va. 342, 349 (2022) (quoting *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019)). "The movant bears the burden of proof on such a plea, and if evidence is presented ore tenus, the circuit court's factual findings 'are accorded the weight of a jury finding and will not

be disturbed on appeal unless they are plainly wrong or without evidentiary support.'" *Id.* (quoting *Massenburg*, 298 Va. at 216). "When the plea in bar depends on pure legal questions, including questions of statutory construction, we review the circuit court's holding de novo." *Id.* "When a trial court hears no evidence on a matter raised in a plea in bar, 'the trial court, and the appellate court upon review, must rely solely upon the pleadings in resolving the issue presented.'" *Our Lady of Peace, Inc. v. Morgan*, 297 Va. 832, 850 n.8 (2019) (quoting *Tomlin v. McKenzie*, 251 Va. 478, 480 (1996)).

In seeking this Court's review, the siblings assign error to the court's dismissal of each of these claims. They argue that "the discovery rule should apply, tolling the statute of limitations." Whether the discovery rule tolled the statute of limitations for the siblings' claims of breach of fiduciary duty, fraud, and conversion is a mixed question of law and fact. Because no evidence was presented at the plea in bar hearing, we look to the pleadings for the relevant facts and address all questions of law, such as issues of statutory construction, de novo.

A. The Breach of Fiduciary Duty Claim

The statute of limitations for a breach of fiduciary duty claim is two years. Code § 8.01-248. The circuit court concluded that the first allegation of breach in the complaint occurred no later than April 2015, meaning the siblings needed to file their claim by April 2017. Even construed generously, Mingsisouphanh's duties as estate administrator were complete by at least October 3, 2016, when the Commissioner of Accounts for Fauquier County reviewed the first and final accounting of Taengsap's estate and certified that Mingsisouphanh had distributed the funds appropriately.[3] This is the last date that the pleadings allege that Mingsisouphanh

---

[3] As this is the latest possible date that Mingsisouphanh is alleged to have acted as a fiduciary, we use this as the last date that could have possibly triggered a breach of fiduciary duty claim under the facts pleaded without deciding that the approval of an accounting is ordinarily the point of accrual for such a claim.

acted as a fiduciary and would have required the siblings to file their complaint by October 2018. But the complaint was not filed until October 13, 2020.

The siblings argue that their claim is timely for several reasons. First, they submit that a breach of fiduciary duty claim begins to accrue not when the breach occurred, but when the breach was discovered or should have been discovered through the exercise of due diligence. In other words, they argue that the "discovery rule" set out in Code § 8.01-249 should apply.[4] Code § 8.01-249(1) states:

> The cause of action in the actions herein listed shall be deemed to accrue as follows:
>
> 1. In actions for fraud or mistake, in actions for violations of the Consumer Protection Act (§ 59.1-196 et seq.) based upon any misrepresentation, deception, or fraud, and in actions for rescission of contract for undue influence, when such fraud, mistake, misrepresentation, deception, or undue influence is discovered or by the exercise of due diligence reasonably should have been discovered.

"Our basic rules for statutory interpretation are well-established." *Ballard v. Commonwealth*, 82 Va. App. 404, 409 (2024). Our primary objective is to "ascertain and give effect to legislative intent," and the "lodestar for intent is 'the plain meaning of the language used' in the statute." *Id.* (first quoting *Grethen v. Robinson*, 294 Va. App. 392, 397 (2017); and then quoting *Street v. Commonwealth*, 75 Va. App. 298, 306 (2022)). We "'presume that the legislature chose, with care, the specific words of the statute' and that '[t]he act of choosing carefully some words necessarily implies others are omitted with equal care.'" *Va. Elec. &*

_____

[4] On appeal, the siblings argue generally for the application of a "discovery rule" triggered by the discovery of the breach of fiduciary duty without citing to Code § 8.01-249. The trial court, in its ruling, correctly held that Code § 8.01-249 did not apply to a breach of fiduciary duty claim. To the extent it could be argued that the siblings did not adequately brief the applicability of Code § 8.01-249 before this Court, we find that addressing the question on the merits is nevertheless the "best and narrowest ground[]" for resolution. *Durham v. Commonwealth*, ___ Va. ___, ___ n.2 (Aug. 1, 2024).

*Power Co. v. State Corp. Comm'n*, 300 Va. 153, 163 (2021) (quoting *Wal-Mart Stores East, LP v. State Corp. Comm'n*, 299 Va. 57, 70 (2020)).

As many Virginia circuit courts and the District Courts for the Western and Eastern Districts of Virginia have held, Code § 8.01-249(1) explicitly identifies the causes of action subject to the discovery rule, and breach of fiduciary duty is not one of them.[5] We affirm that straight-forward conclusion. A breach of fiduciary duty claim accrues when the breach occurs, and the discovery rule set out in Code § 8.01-249 does not apply.

The siblings then point to a different statute, Code § 8.01-229(D), to argue that Mingsisouphanh obstructed their ability to file the complaint, thereby tolling the statute of limitations. Code § 8.01-229(D) states:

> When the filing of an action is obstructed by a defendant's (i) filing a petition in bankruptcy or filing a petition for an extension or arrangement under the United States Bankruptcy Act or (ii) using any other direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought.

---

[5] *See, e.g.*, *Colgate v. Disthene Group, Inc.*, 86 Va. Cir. 218, 228 (Buckingham Cnty. Feb. 4, 2013) ("[I]f presented with the question, the Supreme Court of Virginia would be unlikely to apply the discovery rule to a claim of a breach of fiduciary duty."); *Professionals I, Inc. v. Pathak*, 47 Va. Cir. 476, 480 (Fairfax Cnty. Dec. 4, 1998) ("[T]he breach of fiduciary duty claim is not one of the statutorily enumerated causes of action subject to the 'discovery rule.'"); *Safe Haven Wildlife Removal & Prop. Mgmt. Experts, LLC v. Meridian Wildlife Servs. LLC*, 716 F. Supp. 3d 432 (W.D. Va. 2024) (holding that in Virginia, the statute of limitations for a breach of fiduciary duty claim is two years, and a cause of action for breach of fiduciary duty accrues at the time of the breach); *Jones v. Shooshan*, 855 F. Supp. 2d 594, 602-03 (E.D. Va. 2012) (holding that in Virginia, a "plaintiff's claim for breach of fiduciary duty accrued at the time of the breach, not at the time plaintiff discovered the breach"). *See also Casey v. Merck & Co.*, 283 Va. 411, 416 (2012) (noting that "[i]t is well-established that 'statutes of limitations are strictly enforced and must be applied unless the General Assembly has clearly created an exception to their application,'" that "[a] statute of limitations may not be tolled, 'or an exception applied, in the absence of a clear statutory enactment to that effect,'" and that "'[a]ny doubt must be resolved in favor of the enforcement of the statute'" (first quoting *Rivera v. Witt*, 257 Va. 280, 283 (1999); and then quoting *Arrington v. Peoples Sec. Life Ins. Co.*, 250 Va. 52, 55-56 (1995))).

The party seeking to toll a statute of limitations bears the burden of proving that tolling applies. *See Birchwood-Manassas Assocs., L.L.C. v. Birchwood at Oak Knoll Farm, L.L.C.*, 290 Va. 5, 7 (2015) (refusing to consider whether the statute of limitations had tolled because plaintiffs "[did] not allege any affirmative acts by its managers or the Defendants to hinder the assertion of its claims"). Here, the siblings raised a breach of fiduciary duty claim in their original complaint, but failed to introduce any evidence at the plea in bar hearing. The operative complaint did not allege that Mingsisouphanh obstructed the filing of a breach of fiduciary claim, nor did the siblings make that argument in their opposition to the plea in bar.[6] The circuit court did not address the applicability of this statute in its letter opinion, and the objections to the court's order neither referenced Code § 8.01-229(D) nor argued that Mingsisouphanh obstructed the filing.[7]

"[A]n appellate court's review of the case is limited to the record on appeal." *Wilkins v. Commonwealth*, 64 Va. App. 711, 717 (2015). This Court cannot consider unpreserved arguments on appeal "except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. The siblings failed to preserve their argument below and do not raise an "ends of justice" argument on appeal. And we do not invoke the exception sua sponte. *Merritt v. Commonwealth*, 69 Va. App. 452, 461 (2018). Accordingly, we find this argument waived.

B. The Conversion Claim

Next, we turn to the conversion claim that was pleaded in the siblings' original complaint. The statute of limitations for conversion is five years. Code § 8.01-243(B). The siblings assign error to the court's failure to apply a "discovery rule" while arguing that "even

___

[6] While the court's letter opinion affirms that no evidence was presented at the plea in bar hearing, we cannot consider whether the argument was raised at the hearing because we lack a transcript of that proceeding.

[7] To the contrary, the siblings objected on the basis that their breach of fiduciary count was properly pled under Code § 8.01-245(A) as it was a claim brought on the bond of the fiduciary—a theory that the court expressly rejected.

- 10 -

though the conversion occurred when . . . Mingsisouphanh deposited the checks into his personal account and then began writing check[]s to himself and others, the conversion could *still have been stopped* prior to the date the Commissioner certified the Estate filings," citing Code § 8.01-229(D). That the conversion "could still have been stopped" does not lead us to conclude that we should apply a discovery rule, as the tolling of a statute of limitations is a statutory matter. Further, and more important, the record does not show that the siblings argued for a discovery rule or any kind of tolling based on Code § 8.01-229(D) during the plea in bar hearing, where they carried the burden to prove that their claim was timely. Indeed, the siblings have not preserved any argument about the applicability of Code § 8.01-229(D) to their claim of conversion, so we find it waived under Rule 5A:18.[8]

The siblings' other argument relating to their conversion claim is also waived. The court below ruled that the statute of limitations for the conversion claim began to run when the conversion took place—which the original complaint alleged was no later than April 2015, when Mingsisouphanh transferred funds out of the estate bank account. When the siblings objected to this order, they argued only that the "*injury* did not occur until the filing of the Final Accounting by Defendant Mingsisouphanh," because up until that point, "Mingsisouphanh had authority to control the funds to ensure distributions" and that it was not until that authority ended that the act became one of conversion. Now on appeal, the siblings have changed course and now argue that the statute of limitations should be tolled because the date of conversion was on October 3, 2016, when the Commissioner of Accounts certified the first and final accounting. Because the siblings did not make this argument below, we find it waived under Rule 5A:18. *See Edwards v.*

---

[8] The briefing argues that the siblings had no reason to "believe anything was wrong" or that "anything inappropriate had occurred." Even under the assumption that this argument is preserved for our review, Code § 8.01-249(1) could not apply to a conversion claim for the same reasons it does not apply to a breach of fiduciary duty claim.

- 11 -

*Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc) ("Making one specific argument on an issue does not preserve a separate legal point on the same issue for review.").[9]

### C. The Fraud Claim

Next, the siblings argue that the court erred in dismissing their fraud claim as being barred by the statute of limitations.[10]

At its core, fraud involves more than mere miscommunication or mistake—it requires an intent to deceive or knowledge of wrongdoing. As a result, every fraud allegation necessarily implies that trust was placed in someone who betrayed it. That said, a statute of limitations still applies to every fraud claim and under Code § 8.01-243, a fraud claim must be brought within two years of when the cause of action accrues. An action for fraud accrues when the fraud is discovered, or when, by the exercise of due diligence, it should have been discovered. *See* Code

_____

[9] We also note that the trial court's finding that the conversion took place in April 2015 was not clearly erroneous, as it occurred just a few months after Mingsisouphanh received the wrongful death settlement funds in January 2015 for distribution. Although it is possible for a court to find that the injury occurred at a later date, it is not unreasonable to think that someone acting under power of attorney should have disbursed such funds within three months. Notably, it was the siblings themselves who argued in their original complaint that the date of injury for the conversion claim was April 2015. Moreover, the trial court's rejection of June 7, 2016 as the date of injury was not clearly erroneous given that Mingsisouphanh had personally already spent the majority of the settlement funds by that time, so any injury from the conversion had to have occurred before then. Either way, the date that the final accounting was filed would not be the correct date of injury for a conversion claim given these circumstances.

[10] The siblings assign error to the court's order sustaining the plea in bar and dismissing the fraud claim as raised in the original complaint, and also the dismissal following the decision to replead the fraud claim in the first amended complaint. After the fraud claim was dismissed without prejudice and the siblings elected to refile it, that became the operative claim and the court's dismissal of the same is the only order on the matter that is subject to our appellate review. Therefore, we do not review the court's order dismissing the fraud claim as raised in the original complaint.

In addition, Mingsisouphanh argues that the Taengsaps agreed to voluntarily dismiss the fraud and conversion claims brought in the third amended complaint in a consent order, mooting any review of those claims on appeal. However, the fraud and conversion claims in the third amended complaint were asserted on behalf of Manivong as estate administrator for Taengsap's parents, and not reasserted as to the siblings. Thus, our review of the fraud claims as to the siblings is not mooted by the consent order.

§ 8.01-249(1) (stating the cause of action accrues "[i]n actions for fraud . . . when such fraud . . . is discovered or by the exercise of due diligence should have been discovered"). "The so-called 'discovery rule serve[s] to soften the hard edges of statutory limitations periods.'" *Zeng v. Charles Wang*, 82 Va. App. 326, 345 (2024) (quoting *Brumbaugh v. Princeton Partners*, 985 F.2d 157, 162 (4th Cir. 1993)). "Indeed, 'the facts which underlie a plaintiff's allegations may only gradually come to light.'" *Id.* (quoting *Brumbaugh*, 985 F.2d at 162). "Commencement of a limitations period need not, however, await the dawn of complete awareness." *Id.* (quoting *Brumbaugh*, 985 F.2d at 162).

"A defendant asserting the plea in bar to a fraud claim bears the burden of proving that the statute of limitations has expired, including establishing when the cause of action accrued." *Id.* The burden then "shifts to the plaintiff 'to prove that, despite the exercise of due diligence, he could not have discovered the alleged fraud within the two-year period before he commenced the action.'" *Id.* (quoting *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 117 (2008)). Due diligence is "[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case." *Schmidt*, 276 Va. at 118 (quoting *STB Mktg. Corp. v. Zolfaghari*, 240 Va. 140, 144 (1990)). "Whether such due diligence has been exercised must be ascertained by an examination of the facts and circumstances unique to each case." *Id.* (quoting *STB Marketing*, 240 Va. at 144).

As no evidence was presented at the plea in bar hearing, the circuit court looked to the complaint to determine whether any facts demonstrated that the siblings, despite the exercise of due diligence, could not have discovered the alleged fraud before October 13, 2018—two years before the complaint was originally filed. According to the complaint, the siblings only learned

of the existence of the wrongful death settlement funds on July 15, 2020. Upon our examination of the other facts alleged in the complaint, we find that the siblings pleaded several facts that would have objectively triggered concern about Mingsisouphanh's handling of the case and that a simple search of public records would have revealed the fraud.

Our Supreme Court opined about whether a person should have discovered fraud in *Schmidt*, a case in which a homeowner was duped into signing a contract with fraudulent mortgage terms. 276 Va. at 118. There, the events "surrounding the execution of the mortgage loan documents"—the documents were signed in a restaurant rather than an office, and Schmidt was told they would be notarized *after* he signed them—"were sufficient in and of themselves to put Schmidt *on notice* that, at a minimum, he needed to make further inquiry." *Id.* (emphases added). The fact that Schmidt was promised copies of the loan documents and never received them was further cause for him to be on notice and exercise "[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case." *Id.* (quoting *STB Marketing*, 240 Va. at 144). The *Schmidt* Court also discussed *STB Marketing*, a case on which the siblings rely here. In *STB Marketing*, the Supreme Court concluded that the plaintiff met the burden of proof to show that the fraud could not have been uncovered, as there was nothing suspicious about the transaction in question and because "a thorough examination of land records and foreclosure sale documents would not have apprised the plaintiff of the fraudulent acts at issue." *Id.* at 119 (discussing *STB Mktg. Corp.*, 240 Va. 140.)

Here, the siblings pleaded that after Mingsisouphanh originally came to visit them in 2014, they had no direct communication with him until he returned to Thailand to see them in 2015. When the siblings repeatedly asked for updates, Mingsisouphanh failed to return their

calls, texts, or emails. Mingsisouphanh's assistant also told them that he was not getting many responses from Mingsisouphanh himself. Additionally, the siblings alleged that in 2015, Mingsisouphanh had promised to take care of all their debts, but he never did—not even reimbursing them for their parents' funeral expenses, which he had promised to pay. They also alleged that when Mingsisouphanh came back to visit them in Thailand in February 2015, he never told them about the settlement, had them sign documents that they could not understand because they were in English, and represented that "money was coming and would be deposited into the accounts that they had opened." They also alleged that at one point, Mingsisouphanh transferred some funds into their accounts but that his assistant told them that it was a gift, not proceeds from the wrongful death lawsuit, and that they were later asked to return a portion of it to Mingsisouphanh. Finally, they alleged that Mingsisouphanh's assistant told them in February 2016 that the lawsuit could not go forward because there was insufficient evidence to proceed since the parents had died in the interim and that they relied on this representation.

These red flags spanning multiple years would ordinarily trigger concern and prompt action. But notably, whether due diligence was shown is "not measured by any absolute standard, but depend[s] on the relative facts of the special case." *Schmidt*, 276 Va. at 118 (quoting *STB Marketing Corp.*, 240 Va. at 144). And this case has unique aspects: the complaint alleged that in "Laotian culture and Buddhist teachings, monks—especially ones serving as abbots and deputy abbots —are trusted implicitly" and that "[i]t is considered a grievous sin under Buddhist teachings to question, distrust, or challenge a monk." The siblings' complaint included additional arguments about Buddhist beliefs that "a monk's actions are beyond reproach" and that a Buddhist "is not allowed to question a monk's actions or his intent." On top of this, the siblings were located in rural Thailand, and did not speak English.

Since due diligence is case-specific and contingent on how a "reasonable and prudent man under the particular circumstances" might act, *Schmidt*, 276 Va. at 118, we agree that religious, ethnic, and racial considerations are relevant factors. The circuit court considered those factors here in ruling that the siblings failed to allege that "their distance from Fauquier County, the language barrier, or any action by . . . Mingsisouphanh frustrated, misdirected, or blocked their access to information that would have alerted them to the improprieties they now allege" prior to October 13, 2018. Reviewing this application of the facts to the law de novo, we agree that the general allegation that a Buddhist cannot question a monk's actions or intent was simply not enough to show an exercise of due diligence as to toll the statute of limitations. After all, the siblings did attempt to get additional information and updates from Mingsisouphanh in 2015 and 2016. But their decision to completely rely on a text message sent from Mingsisouphanh's assistant, allegedly telling them that the lawsuit could not continue because the parents had died, failed to show due diligence. The reasonable and prudent course of action would have been to confirm the information in this text in some way.

Therefore, we agree with the circuit court that the complaint failed to demonstrate that the siblings "took any steps that would amount to prudent, active or assiduous effort to investigate, confirm or question any aspect of their rights." For these reasons, we affirm the court's dismissal of the fraud claim as time-barred.[11]

> II. The trial court was correct to grant summary judgment because no material facts are in dispute.

In their third amended complaint, the siblings asserted a claim to falsify and surcharge under Code § 8.01-245 against Mingsisouphanh and Penn National. They claimed that

---

[11] For the first time on appeal, the siblings claim that Mingsisouphanh committed fraud on the court. This argument was not raised below, nor did they assign error based on this theory, so we do not consider this argument.

- 16 -

Mingsisouphanh had fiduciary duties as estate administrator that obligated him to distribute the assets of the estate to them and that Penn National had to indemnify them for Mingsisouphanh's failure to do so under their bond. Penn National argued below that they were entitled to summary judgment because they were not liable for actions committed after Mingsisouphanh "faithfully discharged" his duties as estate administrator for which he was bonded and that the misdeeds alleged occurred while Mingsisouphanh was acting under the powers of attorney. The siblings argue on appeal that the court's grant of summary judgment to Penn National was in error.

"In an appeal from a circuit court's decision to grant or deny summary judgment, we review the application of the law to undisputed facts de novo." *Ranger v. Hyundai Motor Am.*, 302 Va. 163, 169 (2023). "Under well-settled principles, we review the record applying the same standard a trial court must adopt in reviewing a motion for summary judgment, accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009).

To analyze this claim, we must consider the limited nature of a suit to surcharge and falsify an accounting, and the extent of a surety's liability to indemnify a claimant pursuing this remedy. A "suit to surcharge and falsify an accounting entails the 'surcharge' of the account (compensation for misspent funds) and 'falsification' (rejection of the prior proposed accounting as improper)." *Minor v. Heishman*, 78 Va. App. 690, 718 n.10 (2023). "To surcharge is to allege an omission; to falsify is to deny the correctness of certain of the items rendered." *Davis v. Singleton*, 130 S.E.2d 10, 14 (N.C. 1963) (quoting *Story's Equity Jurisprudence* (14th ed.) § 701)). The action is appropriate to correct "errors or mistakes" shown in an account. *Lister v.*

*Virginia Nat'l Bank.*, 209 Va. 739, 741-42 (1969).[12]  Unlike a claim for fraud or accident, which affects the entire probate action and allows the account to be opened again such that "the whole of it becomes subject to review, when it is merely surcharged and falsified the inquiry is limited to particular items alleged to have been improperly included or omitted, and in all other respects, the account is left to stand as it is." *Id.* at 742.

"[A] fiduciary's accounts settled before a commissioner are presumed to be correct and the burden of proving them incorrect is upon the attacking party." *Commercial & Sav. Bank v. Burton*, 183 Va. 133, 138 (1944).  Compared to the two-year statute of limitations that governs claims for fraud or breach of fiduciary duty, a significantly longer statute of limitations applies to seek correction of these errors and mistakes.  Under Code § 8.01-245(B), an action "to hold the fiduciary or his sureties liable for any balance stated in such account" must be "brought within ten years after the account has been confirmed."

Turning to the undisputed facts considered in the light most favorable to the siblings, we conclude that the circuit court correctly granted summary judgment in favor of Penn National.  To start, under the "Claim to Falsify and Surcharge," the siblings alleged that Mingsisouphanh "failed to perform his fiduciary duty" and "absconded" with money that belonged to the beneficiaries.  The only reference to the accounting was this: "Defendant Mingsisouphanh produced an accounting that incorrectly identified the distributions of the estate and misrepresented the disposition of the estate assets."  This allegation failed to identify "the particulars wherein it is supposed to be erroneous," and instead made a general allegation of

---

[12] In *Lister*, for example, plaintiffs sought to surcharge and falsify an account, alleging that the bank, acting as executor, paid excessive fees in managing the estate, contrary to explicit instructions.  209 Va. at 739-40.  The Court held that because the plaintiffs did not seek a general review of the entire account, but rather their "inquiry is directed toward error or mistake in certain specific items" in the account itself, they had properly brought a surcharge and falsify claim.  *Id.* at 742.

misrepresentation. *Radford v. Fowlkes*, 85 Va. 820, 845 (1889) (quoting 4th Minor's Inst. at 1233); 8A Michie's Jurisprudence of Virginia & West Virginia, *Executors and Administrators* § 251 ("A bill to surcharge and falsify a settlement of an administrator's account must particularize errors.").

Even assuming, however, that this general allegation was sufficient to particularize the error with the accounting, we agree with the circuit court that the undisputed facts show that the accounting correctly listed all estate transactions. On January 30, 2015, Mingsisouphanh received the settlement funds into Taengsap's official estate bank account in his role as estate administrator. On that same day, he issued checks from the estate bank account to each of the Taengsap beneficiaries for the amounts specified in the court's settlement order, again as estate administrator. Acting under power of attorney,[13] Mingsisouphanh then deposited those checks on behalf of the siblings into a separate, private account named "Dr. Phonexay Mingsisouphanh/Taengsap Family Account," endorsing the back of each family member's check with his signature as their "attorney-in-fact." Because the accounting was technically correct, the siblings' claim to surcharge or falsify fails.

The problem, as alleged by the siblings, is that after Mingsisouphanh deposited the checks into the private account, he proceeded to spend the money on himself and never actually transferred it to the siblings. But whether the siblings received the funds in a manner that

---

[13] The authorization of an attorney-in-fact under a durable general power of attorney is broad and includes stepping into the principal's shoes to accept funds. *See* Code § 64.2-1600 ("'Power of attorney' means a writing or other record that grants authority to an agent to *act in the place of the principal*, whether or not the term power of attorney is used." (emphasis added)). Each power of attorney authorized Mingsisouphanh to "establish, add to, withdraw from, or close my accounts or deposits in banks or other financial institutions," and bestowed him with the power to "sign any check, deed, contract, pleading, retirement or disability election, or any other documents" and "receive" and "possess . . . every sum of money, right or interest, due and owing, or that may become due and owing, to me on any and every account, claim, contract or tort."

allowed them to spend it personally is not relevant to whether the accounting itself was accurate. Here, the siblings attempt to squeeze breach of fiduciary duty and fraud claims into the narrow mold of an action to surcharge and falsify under Code § 8.01-245 and gain the benefit of the longer statute of limitations. They argue that, through a surcharge and falsify action, a surety must indemnify beneficiaries for any injury stemming from the fiduciary's fraud, conversion, or breach of fiduciary duty. Because this would significantly expand the scope of a surcharge and falsify action far beyond correcting items omitted from the accounting (surcharging) or fixing items misstated in the accounting (falsifying), we reject this argument.

It is true that a surety generally ensures the faithful performance of an estate administrator. An estate administrator has statutory duties to collect all assets, pay all debts, taxes, and expenses, and distribute any remaining assets to beneficiaries as ordered by a court. *See generally* Code §§ 64.2-500 to -558; *Bliss v. Spencer*, 125 Va. 36, 57 (1919) ("It is the duty of an administrator to distribute the personal estate after the payment of debts."). When a court qualifies an estate administrator, a probate bond is required to ensure the faithful service of the fiduciary. Code § 64.2-505. A surety is the third-party that secures this bond, and a surety's liability "is not to be extended by implication beyond the terms of his contract." *Nat'l Sur. Co. v. Commonwealth*, 125 Va. 223, 232 (1919) (quoting *Mann v. Mann*, 119 Va. 630, 634 (1916)). "The sureties in a bond are bound to the full extent to which their principal is bound" and a principal "may be liable beyond the stipulations of the instrument, independently of them, but so far as his liability is in consequence of the bond, and by force of its terms, his surety is bound with him." *Stovall v. Banks*, 77 U.S. 583, 588 (1870).

The bond in this case reads, "Now, therefore, if the said Phonexay Mingsisouphanh as aforesaid, shall faithfully discharge the duties of the office, post or trust of Administrator of the personal estate of PHRA CHOM TAENGSAP, Deceased then this obligation to be void,

- 20 -

otherwise remain in full force and virtue." Thus, Penn National was generally liable for the bond regarding the duties Mingsisouphanh took on in "the office, post or trust of Administrator of the personal estate of Phra Chom Taengsap," until he "faithfully" discharged these duties.[14] But this general obligation does not supersede the confines of particular causes of action and their accompanying statutes of limitation. If the siblings had timely alleged that Mingsisouphanh breached his fiduciary duties by failing to faithfully discharge his duties as estate administrator, or that he committed fraud, then we would be able to evaluate whether Penn National was liable to indemnify them for the same. But the only timely claim before us is the action to falsify and surcharge under Code § 8.01-245, which is limited to challenging the final accounting as incorrect.

The circuit court correctly concluded that the allegations of misconduct against Mingsisouphanh "occurred only is his capacity as attorney-in-fact under the Durable General Powers of Attorney and *not* in his capacity of Administrator of the Estate" and that Penn National's liability as a surety did not extend beyond the administration of the estate. Even if, as the siblings argue, the scheme to defraud them existed before Mingsisouphanh submitted the final accounting, and led him to fraudulently obtain powers of attorney that they did not understand, these misdeeds cannot be corrected through an action to surcharge and falsify and would have to be pursued through others causes of action. Further, consistent with the terms of Penn National's bond, the surety could only be liable to indemnify the siblings through those other causes of action. Thus, to the extent there is a factual dispute over what Mingsisouphanh knew, or should have known, regarding what would happen to the settlement funds while he was

---

[14] A "faithful discharge" of duties by an estate administrator is not only a term stipulated in the surety agreement here, but it is also required by statute. *See, e.g.*, Code § 64.2-548 (allowing an action against the surety of a personal representative for failing "to discharge his duties faithfully").

- 21 -

acting as estate administrator, it is not material to an action to surcharge and falsify. *See Commonwealth v. Proffitt*, 292 Va. 626, 635 (2016) ("To be material, 'the evidence [must] tend[] to prove a matter that is properly at issue in the case.'" (alterations in original) (quoting *Brugh v. Jones*, 265 Va. 136, 139 (2003))).

Applying the law to the undisputed material facts, the accounting correctly reflected that Mingsisouphanh issued checks to the siblings from the estate bank account and that each check was endorsed by Mingsisouphanh as their attorney-in-fact. With nothing to surcharge and falsify, neither Mingsisouphanh nor Penn National have any liability under Code § 8.01-245 and the circuit court was correct to grant summary judgment.

III. The siblings failed to preserve a challenge to the court's conclusion that punitive damages are unavailable for a falsify and surcharge claim under Code § 8.01-245.

Finally, we address the siblings' assignment of error to the court's February 2022 order sustaining a demurrer on the request for punitive damages included in the falsify and surcharge claim under Code § 8.01-245 in the second amended complaint. After the court sustained the demurrer, the court granted the siblings leave to file a third amended complaint. In the third amended complaint, the siblings restated a claim to falsify and surcharge accounts under Code § 8.01-245, but included no requests for punitive damages. Nor did the third amended complaint incorporate or reference the earlier second amended complaint.

"When a circuit court sustains a demurrer to an amended pleading which is complete in itself and fails to incorporate by reference allegations in earlier pleadings, we will consider only the allegations contained in the amended pleading that was the subject of the demurrer sustained by the judgment appealed from." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 129 (2000); *see also* Code § 8.01-273(B) ("[W]henever a demurrer to any pleading has been sustained, and as a result thereof the demurree has amended his pleading, he shall not be deemed to have waived his right to stand upon his pleading before the amendment, provided that (i) the

- 22 -

order of the court shows that he objected to the ruling of the court sustaining the demurrer and (ii) the amended pleading incorporates or refers to the earlier pleading.").

Because the siblings failed to incorporate by reference the allegation from the second amended complaint that punitive damages were warranted as a remedy for their claim to falsify and surcharge accounts under Code § 8.01-245, and instead repleaded the claim anew without reference to punitive damages, we cannot consider this assignment of error.

CONCLUSION

For these reasons, we affirm.

*Affirmed.*